2007 UT App 368

**PINNACLE HOMES, INC., Petitioner,**

v.

**LABOR COMMISSION, Platinum Builders, Mel Beagley, and/or Uninsured Employers Fund, and Glen M. Ebmeyer, Respondents.**

No. 20060869–CA.

Court of Appeals of Utah.

Nov. 16, 2007.

Joseph C. Alamilla, Theodore E. Kanell, and John H. Romney, Salt Lake City, for Petitioner.

Alan L. Hennebold, Timothy C. Allen, and Sharon J. Eblen, Salt Lake City; and David J. Holdsworth, Sandy, for Respondents.

Before Judges BILLINGS, DAVIS, and ORME.

OPINION

BILLINGS, Judge:

¶ 1 Mr. Glen M. Ebmeyer was injured while completing a roof on a house owned by Pinnacle Homes, Inc. (Pinnacle). At the time, Pinnacle had contracted with Platinum

Builders (Platinum) to roof the house. Platinum, in turn, had assigned Mr. Ebmeyer to complete the job. Neither Platinum nor Pinnacle carried workers' compensation insurance. The Utah Labor Commission (the Labor Commission) determined that both Platinum and Pinnacle were obligated to pay Mr. Ebmeyer's workers' compensation claims. We affirm.

## BACKGROUND

¶ 2 Pinnacle is a Utah corporation that constructs and sells new homes. Pinnacle is owned by three people who manage all aspects of the business; it does not directly employ any other individuals. Instead, Pinnacle hires various contractors to do all the construction on the homes it builds.

¶ 3 In April 2003, Pinnacle contracted with Platinum to roof several houses. Platinum's owner, Mr. Mel Beagley, assigned Mr. Ebmeyer to roof some of these houses. During the course of completing one of these projects, Mr. Ebmeyer fell from the roof and was injured. Mr. Ebmeyer was unable to continue working.

¶ 4 Because neither Platinum nor Pinnacle carried workers' compensation insurance, Mr. Ebmeyer filed applications with the Labor Commission to compel both companies to pay the workers' compensation benefits he was due. The administrative law judge (the ALJ) at the Labor Commission determined that Platinum and Pinnacle were both Mr. Ebmeyer's employers—Platinum as a direct employer and Pinnacle as a "statutory employer." The ALJ held the two companies jointly and severally liable for the payment of workers' compensation claims arising from Mr. Ebmeyer's injuries.

¶ 5 Pinnacle appealed to the Labor Commission Appeals Board (the Appeals Board), which affirmed the ALJ's decision.[1] Pinnacle now appeals the Appeals Board's decision.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 6 The issue before us is whether the Appeals Board correctly determined that Pinnacle was Mr. Ebmeyer's "statutory employer," as defined by the Utah Workers' Compensation Act (the Act), *see* Utah Code Ann. § 34A–2–103(2)(a) (Supp.2007). "When reviewing the [Appeals] Board's decision, we will disturb its factual findings only if they are 'not supported by substantial evidence when viewed in light of the whole record before the court.'" *Ameritemps, Inc. v. Labor Comm'n,* 2005 UT App 491, ¶ 8, 128 P.3d 31 (quoting Utah Code Ann. § 63–46b–16(4)(g) (2004)). However, "'[m]atters of statutory construction are questions of law that are reviewed for correctness.'" *Florida Asset Fin. Corp. v. Utah Labor Comm'n,* 2004 UT App 273, ¶ 7, 98 P.3d 436 (quoting *Esquivel v. Labor Comm'n,* 2000 UT 66, ¶ 13, 7 P.3d 777).

¶ 7 Pinnacle asserts that even if it were technically an "employer," Mr. Ebmeyer was not its employee under subsection (7)(a). *See* Utah Code Ann. § 34A–2–103(7)(a). Pinnacle contends that it had no control over Mr. Ebmeyer, under either the "right to control" test, *Rustler Lodge v. Industrial Comm'n,* 562 P.2d 227, 228 (Utah 1977), or the "supervision or control" test, *Bennett v. Industrial Comm'n,* 726 P.2d 427, 432 (Utah 1986).

■ ¶ 8 "Whether a worker is an employee within the meaning of the work[er]'s compensation laws requires the application of a statutory standard to the facts." *Bennett,* 726 P.2d at 429. As such, we review the decision of the Appeals Board with some deference. *See Drake v. Industrial Comm'n,* 939 P.2d 177, 182 (Utah 1997).

## ANALYSIS

■ ¶ 9 Section 34A–2–401 of the Act requires employers to provide workers' compensation benefits to employees injured in work-related accidents. *See* Utah Code Ann. § 34A–2–401 (2005). Section 34A–2–103 fleshes out the definitions of "employer" and "employee" in determining workers' compensation responsibilities. *See id.* §§ 34A–2–103(2)(a), (7)(a).

---

1. Platinum is apparently currently insolvent, and so the Uninsured Employers Fund has been added as a party. *See* Utah Code Ann. § 34A–2–704 (2005).

¶ 10 Pinnacle argues that the Appeals Board improperly determined that it was an employer under the Act's definition of "employer," according to Utah Code section 34A–2–103(2). *See id.* § 34A–2–103(2)(a). That section states: "[E]ach person, including each public utility and each independent contractor, who regularly employs one or more workers or operatives in the same business, or in or about the same establishment, under any contract of hire, express or implied, oral or written, is considered an employer under this chapter...." *Id.*

¶ 11 Pinnacle argues that it did not regularly employ one or more workers and, thus, cannot be considered an employer. To strengthen its argument, Pinnacle relies on section 34A–2–104(4), which states:

(4)(a) A corporation may elect not to include any director or officer of the corporation as an employee under this chapter and [c]hapter 3.

(4)(b) If a corporation makes an election under [s]ubsection (4)(a), the corporation shall serve written notice upon its insurance carrier naming the persons to be excluded from coverage.

(4)(c) A director or officer of a corporation is considered an employee under this chapter and [c]hapter 3 until the notice described in [s]ubsection (4)(b) is given.

*Id.* § 34A–2–104(4)(a)–(c).

¶ 12 Pinnacle contends the three officers/owners of its company are not "employees" and that it informed its insurance carrier that it did not want to "include ... [them] as ... employee[s]," *id.* § 34A–2–104(4)(a) as allowed by subsection 4(a). Accordingly, Pinnacle asserts that it had no employees and thus could not be considered an "employer."

¶ 13 Pinnacle's director testified before the Appeals Board that he discussed workers' compensation insurance with Pinnacle's insurance agent:

Q: Did [the insurance agent] make any queries as to whether or not Pinnacle ... had any employees?

A: She did.

Q: And what did you tell her? A: I told her that we did not have employees.

Q: And did you file applications as such with her?

A: Yes.

Q: Did she then tell you what type of insurance you needed?

A: She did. She ... said that we would need general liability insurance, insurance on our ... little office space that we rent, and ... on the workers' compensation, she said that since we were all owners of the corporation that ... we would not be required to purchase workers' compensation insurance; we could opt out of it.

Q: And did you in fact opt out of it?

A: I told [her] that we wanted to opt out of it.

¶ 14 From this, Pinnacle insists it complied with the mandate to provide written notification to its insurance agent. However, the Appeals Board found that Pinnacle did not provide its insurance carrier with *written* notice. We conclude that the Appeals Board's determination is certainly reasonable; indeed, based on the foregoing testimony, it appears that Pinnacle only verbally told an insurance agent it wished to "opt out" of workers' compensation insurance.[2] Based on this factual finding, the Appeals Board determined that (1) the directors of Pinnacle were still considered employees pursuant to subsection 34A–2–104(4)(c), *see* Utah Code Ann. § 34A–2–104(4)(c)(2005); (2) Pinnacle had employees; and thus (3) Pinnacle was a "statutory employer."

¶ 15 Pinnacle also argues that a literal application of section 104(4)(b) leads to the result that a corporation must always obtain workers' compensation insurance, even if the corporation's only employees are corporate officers who can then be excluded from coverage. Pinnacle argues that such a result

---

2. We recognize that the testimony offered suggests there were "filed applications" which, presumably, might have been written. However, we see no other mention nor presentation of such applications, and Pinnacle has not put any further evidence of them before us. Accordingly, we have no reason to question the Appeals Board's factual conclusion on this matter.

could not have been intended by the legislature. However, in 1996, the legislature added subsection (9) to section 31A–21–104 of the Insurance Code: "Notwithstanding [s]ubsection (2) [requiring an insurable interest], an insurer ... may issue a workers' compensation policy to a ... corporation ... that elects not to include any ... corporate officer ... as an employee under the policy even if at the time the policy is issued the ... corporation ... has no employees." *Utah Code Ann.* § 31A–21–104(9) (Supp.2007).

¶ 16 This subsection indicates that the legislature was aware that corporations are required to have workers' compensation coverage even when corporate officers have been excluded as employees and the corporation has no other employees. Utah Code sections 31A–21–104(9), 34A–2–104(4), and 34A–2–103(7) dovetail to ensure that the corporate form of organization is not used to shield corporations from their responsibilities to provide coverage and pay benefits under the workers' compensation system. Accordingly, we affirm the Appeals Board's conclusion that Pinnacle was a statutory employer for purposes of workers' compensation.[3]

■ ¶ 17 We next turn to the question of whether Mr. Ebmeyer was Pinnacle's employee for workers' compensation purposes. The ALJ made findings of fact that Pinnacle was the owner/general contractor who hired Platinum as a roofing subcontractor, that Mr. Ebmeyer was an employee of Platinum, and therefore that he was Pinnacle's statutory

employee under Utah Code section 34A–2–103(7)(a). *See id.* § 34A–2–103(7)(a) (Supp. 2007). The Appeals Board adopted all the ALJ's findings.

¶ 18 Pinnacle argues that "[t]he Labor Commission erred in finding that Pinnacle Homes had any supervision or control over Platinum Builders that warrants a finding that Mr. Ebmeyer was Pinnacle Homes' employee." In considering this mixed question of law and fact, we will uphold the Appeals Board's application of the statute unless it "exceed[s] 'the bounds of reasonableness and rationality'" so as to constitute an abuse of discretion under section 63–46b–16(4)(h)(i) of the Utah Administrative Procedures Act, Utah Code Ann. § 63–46b–16(4)(h)(i) (2004); *see also Osman Home Improvement v. Industrial Comm'n,* 958 P.2d 240, 242 (Utah Ct.App.1998) (quoting *Niederhauser Ornamental & Metal Works Co. v. Tax Comm'n,* 858 P.2d 1034, 1037 (Utah Ct.App.1993)).

¶ 19 The statutory employer provision reads:

If any person who is an employer procures any work to be done wholly or in part for the employer by a contractor over whose work the employer retains supervision or control, and this work is a part or process in the trade or business of the employer, the contractor, all persons employed by the contractor, all subcontractors under the contractor, and all persons employed by any of these subcontractors, are consid-

**3.** Pinnacle does not acknowledge Utah Code section 34A–2–103(7)(e), which explicitly provides for two methods by which a contractor can legally and ethically circumvent its obligation to provide workers' compensation coverage for every individual down its line of employees:

(e) A contractor or subcontractor is not an employee of the employer under [s]ubsection (7)(a), if the employer who procures work to be done by the contractor or subcontractor obtains and relies on either:

(i) a valid certification of the contractor's or subcontractor's compliance with [s]ection 34A–2–201; or

(ii) if a partnership, corporation, or sole proprietorship with no employees other than a partner of the partnership, officer of the corporation, or owner of the sole proprietorship, a workers' compensation policy issued by an insurer pursuant to [s]ubsection 31A–21–104(8) stating that:

(A) the partnership, corporation, or sole proprietorship is customarily engaged in an independently established trade, occupation, profession, or business; and

(B) the partner, corporate officer, or owner personally waives the partner's, corporate officer's, or owner's entitlement to the benefits of this chapter and [c]hapter 3, Utah Occupational Disease Act, in the operation of the partnership's, corporation's, or sole proprietorship's enterprise under a contract of hire for services.

Utah Code Ann. § 34A–2–103(7)(e) (Supp.2007). Pinnacle did neither. These exceptions presumably exist to ensure that workers are covered by somebody, and that organizations cannot simply avoid their responsibilities to provide coverage and pay benefits under the workers' compensation system.

ered employees of the original employer for the purposes of this chapter. . . .

Utah Code Ann. § 34A–2–103(7)(a).

¶ 20 Pinnacle refers us to the traditional "right to control" test, *see, e.g., Rustler Lodge v. Industrial Comm'n*, 562 P.2d 227, 228 (Utah 1977), showing that it had no right to control the individuals who worked on its houses and, thus, was not an employer. However, the traditional right to control test is not appropriate when considering whether Pinnacle is a "statutory employer." *See Bennett v. Industrial Comm'n*, 726 P.2d 427, 431–32 (Utah 1986); *Utah Home Fire Ins. Co. v. Manning*, 1999 UT 77, ¶ 17 n. 8, 985 P.2d 243.

¶ 21 As to the proper understanding and application of section 34A–2–103(7)'s phrase "supervision or control," the Utah Supreme Court's discussion in *Bennett v. Industrial Commission*, 726 P.2d 427 (Utah 1986), is controlling: "[T]he term 'supervision or control' requires only that the general contractor retain ultimate control over the project." *Id.* at 432. The supreme court also observed:

> The power to supervise or control the ultimate performance of subcontractors satisfies the requirement that the general contractor retain supervision or control over the subcontractor. Therefore, as long as a subcontractor's work is a part or process of the general contractor's business, *an inference arises that the general contractor has retained supervision or control over the subcontractor.*

*Id.*[4] (citations omitted) (emphasis added).

¶ 22 In *Bennett*, a general contractor's status as a statutory employer was under consideration. *See id.* at 428. The supreme court discussed section 34A–2–103(7) in terms of the relationship between the general contractor, subcontractor, and the subcontractor's direct employee. *See id.* at 431–33. In the case now before us, there is no general contractor. Rather, Pinnacle, the owner of the construction project, entered into a direct contractual relationship with Platinum, the roofing contractor. However, we conclude

that this distinction makes no difference. Section 34A–2–103(7) looks to the relationship between the "employer" (Pinnacle) and the contractor (Platinum). *See* Utah Code Ann. § 34A–2–103(7) (Supp.2007). Thus, Pinnacle is properly considered the "statutory employer" of Platinum's employees, including Mr. Ebmeyer, if Pinnacle retained the power to supervise Platinum's ultimate performance as discussed in *Bennett*. *See Bennett*, 726 P.2d at 432.

¶ 23 There is no dispute that Pinnacle's business was the construction of homes for sale and that the roofing work Platinum did for Pinnacle was a "part or process" of that business. Consequently, under *Bennett*, the inference arises that Pinnacle retained supervision or control over Platinum. Beyond this inference, the record affirmatively establishes Pinnacle's supervision and control over Platinum. For example, the ALJ found that a Pinnacle truck once stopped Mr. Ebmeyer at a worksite and asked him when Mr. Beagley was going to fix the leaking roof across the street. The ALJ also found that Pinnacle retained indirect control over Mr. Ebmeyer. Under these circumstances, the Appeals Board reasonably concluded that Pinnacle was Mr. Ebmeyer's statutory employer.

¶ 24 As a final observation, the statutory employer provision found in section 34A–2–103(7) serves an important function in Utah's workers' compensation system. Our supreme court has acknowledged that this is a "legislatively created scheme by which conceded nonemployees are deliberately brought within the coverage of the Workers' Compensation Act." *English v. Kienke*, 848 P.2d 153, 158 (Utah 1993). The stated policy for such an encompassing obligation is "to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation protection for their workers." *Bennett*, 726 P.2d at 431 (quoting 1C A.

---

4. Although it is not at issue here, we take note of the phrase "in the trade or business of the employer." Utah Code Ann. § 34A–2–103(7)(a) (Supp.2007). We emphasize that this section is limited to those engaged in a business and would not apply to, for example, homeowners who hire roofers to remodel or repair their own houses.

Larson, *Workmen's Compensation Law* § 43.42 (1986)). Moreover, "[a] secondary purpose of these statutes was 'to forestall evasion of [workmen's compensation acts] by those who might be tempted to subdivide their regular operations among subcontractors, thus escaping direct employment relations with the workers.'" *Id.* (second and third alterations in original) (quoting Larson, *supra*, § 49.15).

## CONCLUSION

¶ 25 We affirm the decision of the Appeals Board that Pinnacle was Mr. Ebmeyer's statutory employer.

¶ 26 WE CONCUR: JAMES Z. DAVIS and GREGORY K. ORME, Judges.