**2014 UT App 201**

## THE UTAH COURT OF APPEALS

RICK J. NICHOLS,
Plaintiff and Appellant,
*v.*
JACOBSEN CONSTRUCTION COMPANY, INC.,
Defendant and Appellee.

Opinion
No. 20130388-CA
Filed August 21, 2014

Third District Court, Salt Lake Department
The Honorable Elizabeth A. Hruby-Mills
No. 120904185

William J. Hansen and Karra J. Porter, Attorneys
for Appellant

Julianne P. Blanch and Scott C. Powers, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and JOHN A. PEARCE concurred.

ORME, Judge:

¶1      While unloading a truckload of scaffolding equipment for a Jacobsen Construction Company (Jacobsen) project, a pile of planks fell on appellant Rick J. Nichols, an employee of a subcontractor, causing him serious injuries. Nichols brought a negligence action against Jacobsen, and Jacobsen moved for summary judgment, arguing that it was immune from Nichols's suit because of the Workers' Compensation Act's exclusive-remedy provision. The trial court agreed with Jacobsen, granted its motion for summary judgment, and subsequently dismissed Nichols's complaint with prejudice. Because we determine that there is at least one genuine

issue of material fact that precludes summary judgment, we reverse the judgment and remand the case for further proceedings.

BACKGROUND[1]

¶2     Jacobsen, as the general contractor on a large construction project, hired several subcontractors to provide services and supplies. As a way to decrease costs on the project, Jacobsen opted to set up a contractor-controlled insurance program (CCIP), under which Jacobsen was responsible for providing workers' compensation benefits to enrolled subcontractors and their employees. In return, the subcontractors agreed to reduce their bids in proportion to the amount the CCIP saved them on insurance costs. As part of the CCIP, Jacobsen asserts that it maintained and enforced a comprehensive safety program, which was described in detail in the safety manual for the project.

¶3     Safway Services, a scaffolding business, was a subcontractor on the project and enrolled in the CCIP. Nichols worked for Safway and was injured while unloading scaffolding components on Jacobsen's project site. Normally a forklift is used to unload the scaffolding components due to their weight, but a Jacobsen employee, concerned about delays, demanded that Nichols unload the equipment by hand instead of waiting for a forklift to arrive. While Nichols was thus engaged, a pile of planks fell and seriously injured him. After the accident, a Safway supervisor took Nichols to Jacobsen's on-site office. A Jacobsen safety supervisor told them—erroneously as it turned out—that Nichols should seek medical assistance anywhere he wanted. The rationale expressed at that time by the Jacobsen safety supervisor, who for whatever reason failed to recognize the relevance of the CCIP, was that "he's

_____

1. On an appeal from a summary judgment, we recite the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party—Nichols in this case. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

not our employee." But the CCIP directs that injured employees of enrolled subcontractors go to a specifically designated medical facility. Acting on the Jacobsen safety supervisor's erroneous instruction, Nichols's coworkers took him to a different clinic for emergency medical care.

¶4    The record on appeal contains three versions of what occurred after the accident. First, there is Nichols's own version of events, detailed in his declaration:

> I filed a workers' compensation claim with Safway, and Safway's workers' compensation carrier began paying on the claim.
> Some months later, [I] received an unexpected telephone call from an individual who stated that he was with Jacobsen Construction and that I needed to contact Jacobsen's workers' compensation carrier, because Jacobsen was taking over my workers' compensation payments. . . .
> I was surprised, but I did not question it.

Second, there is an email from Jacobsen's corporate counsel to Nichols's counsel discussing this lawsuit. It reads:

> It is my understanding that there were some initial coverage disputes between Safway's separate workers compensation insurer and Mr. Nichols resulting from Safway's workers compensation insurer's denial of benefits. It is also my understanding that the basis for this denial was Safway's enrollment in the . . . CCIP . . . . It is finally my understanding that Safway and its separate workers compensation insurer might have acted unreasonably toward Mr. Nichols and left him without proper benefits for some period following his injury. This is unfortunate. Safway apparently delayed putting Jacobsen Construction on notice of the workers compensation claim until sometime

later. However, upon learning of the ordeal, Jacobsen Construction and the Workers Compensation Fund immediately stepped in and made sure to provide benefits to Mr. Nichols . . . .

Finally, the third version of events comes from the affidavit of a safety manager for Jacobsen. In it, the safety manager states that several months after the accident

> Mr. Nichols presented a claim to Jacobsen under the CCIP. After review and consideration of Mr. Nichols' claim by Jacobsen and the [Workers' Compensation Fund], the CCIP workers compensation carrier, Jacobsen Construction extended workers compensation benefits to Mr. Nichols. Upon making the decision to extend benefits to Mr. Nichols, Jacobsen promptly stepped in and assisted Mr. Nichols with his claim . . . .

¶5      Later, Nichols filed his lawsuit against Jacobsen. Jacobsen moved for summary judgment, claiming that it was immune under the Workers' Compensation Act's exclusive-remedy provision. The trial court agreed with Jacobsen, granting summary judgment on the issue of immunity and dismissing the suit with prejudice. Nichols appeals.


ISSUE AND STANDARD OF REVIEW

¶6      Nichols argues that the trial court erred in ruling, as a matter of law, that his claims were barred by the exclusive-remedy provision of Utah's Workers' Compensation Act. We review a grant of summary judgment for correctness. *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600. When the party moving for summary judgment bears the burden of proof, such as a defendant would bear when claiming the affirmative defense of immunity, then the moving party "has an affirmative duty to provide the court with facts that demonstrate both that the party is entitled to judgment

as a matter of law and that there are no material issues of fact that would require resolution at trial." *See id*. ¶ 19. If there is a genuine issue as to any material fact, then summary judgment is inappropriate. *See* Utah R. Civ. P. 56(c).

## ANALYSIS

¶7     Utah law provides injured employees a "right to recover compensation" from their employers exclusively through the Workers' Compensation Act. *See* Utah Code Ann. § 34A-2-105(1) (LexisNexis 2011). This exclusive-remedy provision grants protection to employers from "an action at law" outside this statutory scheme. *Id*. For purposes of the statute, if "an employer procures any work to be done wholly or in part for the employer" by a contractor or a subcontractor, "and this work is a part or process in the trade or business of the employer," then "all persons employed by the contractor, all subcontractors under the contractor, and all persons employed by any of these subcontractors, are considered employees of the original employer." *See id*. § 34A-2-103(7)(a)(ii) (Supp. 2013). *See also Pinnacle Homes, Inc. v. Labor Comm'n*, 2007 UT App 368, ¶¶ 19–24, 173 P.3d 208 (explaining that the term "employer" under the Workers' Compensation Act differs from the usual understanding of the term "employer").[2] And for an employer to be eligible for the exclusive-remedy provision of the statute, it must show, inter alia, that it secured the payment of workers' compensation benefits for the injured employee. *See id*. § 34A-2-103(7)(f)(iii). The statute does not specify how an employer must do this, but the expansively phrased requirement undoubtedly includes project-specific insurance programs such as a CCIP. *See id*; *id*. § 34A-2-201 (2011).

---

2. Because the statutory provisions in effect at the relevant time do not differ materially from the statutory provisions now in effect, we cite the current edition of the Utah Code Annotated as a convenience to the reader.

¶8      In this case, even though Jacobsen did not directly employ Nichols, it was an "employer" under the terms of the statute—a statutory employer. *See Pinnacle Homes*, 2007 UT App 368, ¶¶ 19–24 (distinguishing statutory employers under the Workers' Compensation Act from the usual understanding of the term "employers"). As part of its construction business, Jacobsen engaged Safway to handle a small part of its larger project. Nichols argues that because the statute does not define the word "work," it is reasonable to construe Nichols's actions on the day of his injury in merely delivering scaffolding materials as something other than "work." Adopting this limited interpretation of "work," Nichols contends that Jacobsen could not be a statutory employer because it did not procure "work" from Safway. *See* Utah Code Ann. § 34A-2-103(7)(a)(ii). We do not agree.

¶9      Our first step in interpreting a word used but not defined in a statute is to consider its plain meaning. *See In re Adoption of Baby E.Z.*, 2011 UT 38, ¶ 15, 266 P.3d 702. Considering this, we determine that unloading equipment for a construction project, even without any additional responsibilities, readily falls under the plain meaning of the word "work."[3] It surely was not a lark or a personal frolic on the part of Nichols—it was a delivery made during his normal work day in accordance with the requirements of Safway's contract. Therefore, Nichols is considered an employee of Jacobsen for the purposes of the workers' compensation statute. *See* Utah Code Ann. § 34A-2-103(7)(a)(ii).

¶10     As a *statutory employer*, however, Jacobsen is only eligible for the exclusive-remedy protection if it meets the requirements of section 34A-2-103(7)(f)(ii)–(iii). Among other things, it must have secured the payment of Nichols's benefits. *See id*. § 34A-2-103(7)(f)(iii). By so doing, an eligible statutory employer indicates that it has an "employee–employer relationship" with the injured employee within the context of the overall statutory scheme. *See id.*

---

3. Jacobsen's CCIP sought to treat mere unloading differently—a matter we touch upon in footnote 4.

§ 34A-2-106(4) (LexisNexis 2011) (indicating that general contractors "who do not occupy an employee–employer relationship with the injured" employee are not protected by the exclusive-remedy provision).

¶11 After due consideration of the record, we determine that there is a genuine issue of material fact concerning whether Jacobsen secured the payment of benefits such that it had a statutory employer–employee relationship with Nichols. While it is undisputed that at some point Jacobsen "stepped in" through its CCIP to secure the payment of benefits to Nichols, it is unclear what happened prior to that. Nichols claims that Safway initially secured the payment of his benefits through its separate insurer and that he received benefits for months before Jacobsen voluntarily took over making the payments.[4] Jacobsen's corporate counsel's understanding was that Safway's separate workers' compensation insurer left Nichols "without proper benefits"—or that perhaps Nichols's claim was denied entirely. Finally,

---

4. Even aside from the Jacobsen safety supervisor's comment that Nichols's medical care was not Jacobsen's responsibility, it would not be irrational for Nichols to file through Safway's separate insurer instead of through Jacobsen's CCIP considering that a provision of the CCIP states that "[n]o insurance coverage provided by [Jacobsen] under the CCIP shall extend to the activities or products of suppliers . . . whose employee(s) . . . are engaged solely in the loading, unloading, stocking, testing or hauling of equipment, supplies or materials." At oral argument, Nichols's appellate counsel conceded that, but for the accident, Nichols likely would have gone beyond unloading and actually assisted in erecting the scaffolding on site. For the purposes of this opinion, however, it is enough to observe that Nichols would not have been irrational in assuming that he was not covered by the CCIP, especially given the flawed instruction originally given to him by the Jacobsen safety supervisor who told him he was on his own, and therefore not irrational in applying for benefits through Safway's separate insurer.

Jacobsen's safety manager testified that Nichols waited a few months and then applied directly to Jacobsen's CCIP for benefits and that Jacobsen then "stepped in" to help.

¶12 Nichols asserts that Jacobsen may have stepped in and belatedly made payments in anticipation of a lawsuit as a way to back in to the exclusive-remedy provision in the statute. On the other hand, Jacobsen's counsel asserted during oral argument that the facts in the record support the conclusion that "from day one and dollar one, Jacobsen was paying the workers' compensation benefits." We conclude that such disparate positions can only be explained by genuine disputes of material fact in the record before us.

¶13 Not only do these facts conflict, but they are also material to the disposition of the case. If a significant time passed in which Jacobsen failed to secure the payment of benefits to Nichols, then Jacobsen would likely fail to meet the requirement contained in section 34A-2-103(7)(f)(iii)(B)(I) and would not be considered an eligible employer for the purposes of the exclusive-remedy provision of the statute. Accordingly, we determine that genuine issues of material fact exist that preclude resolution by summary judgment.

CONCLUSION

¶14 Because we determine that a genuine issue of material fact exists as to who originally secured the payment of Nichols's benefits, we must also conclude that summary judgment was improper under these circumstances. *See* Utah R. Civ. P. 56(c). We reverse the trial court's grant of summary judgment and its subsequent dismissal of Nichols's negligence claim against Jacobsen. We remand to the trial court for such further proceedings as may now be in order, consistent with this opinion.

———