*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2016 UT 19**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

RICK J. NICHOLS,
*Respondent,*

*v.*

JACOBSEN CONSTRUCTION CO., INC.,
*Petitioner.*

No. 20140866
Filed April 28, 2016

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake Dep't
The Honorable Elizabeth A. Hruby-Mills
No. 120904185

Attorneys:

William J. Hansen, Karra J. Porter, Sarah E. Spencer,
Salt Lake City, for respondent

Julianne P. Blanch, Alan S. Mouritsen,
Salt Lake City, for petitioner

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
and JUDGE JOHNSON joined.

Having recused himself, JUSTICE HIMONAS does not participate
herein; Fourth District JUDGE CHRISTINE S. JOHNSON sat.

JUSTICE JOHN A. PEARCE became a member of the Court
on December 17, 2015, after oral argument in this
matter, and accordingly did not participate.

JUSTICE DURHAM, opinion of the Court:

### INTRODUCTION

¶1 Rick J. Nichols worked for a subcontractor of Jacobsen
Construction Company in 2011 when scaffolding came loose and fell
on him, causing serious bodily injury. Mr. Nichols alleges that

Jacobsen's negligence caused these injuries and thus filed suit with the district court. Jacobsen moved for summary judgment, claiming immunity from suit under the exclusive remedy provision of the Utah Workers' Compensation Act. The district court granted Jacobsen's motion, determining that Jacobsen qualified for immunity under the "eligible employer" statute because: (1) Jacobsen "procure[d] work" that was "part or process of [its] trade or business," (2) Jacobsen "secure[d] the payment of workers' compensation benefits" for Mr. Nichols, and (3) Jacobsen created and maintained a "written workplace accident and injury reduction program that [met] the requirements" of the statute. UTAH CODE § 34A-2-103(7)(f)(iii)(B).

¶2　Mr. Nichols appealed to the Utah Court of Appeals, which affirmed on the "procuring work" requirement but reversed on the "securing the payment" requirement, concluding that the length of time that passed before Jacobsen began making workers' compensation payments had an impact on whether Jacobsen indeed secured payment of those benefits as the statute required. The court of appeals did not address the workplace accident and injury reduction program requirements.

¶3　We conclude that Jacobsen qualifies as an "eligible employer" under the workers' compensation statutes and has fulfilled all three of the above requirements, thereby qualifying for immunity from suit. We therefore affirm the district court's grant of summary judgment in its entirety; affirming in part and reversing in part the court of appeals' decision.

## BACKGROUND

¶4　Jacobsen Construction Company was a general contractor and construction manager for the City Creek Center commercial development project in Salt Lake City. Jacobsen required its subcontractors to participate in a "contractor-controlled insurance program" (CCIP). Under this plan, Jacobsen purchased a single insurance policy from a single insurer that covered all of Jacobsen's subcontractors. This plan included a workers' compensation policy that provided the first $250,000 of benefits for injured workers. Although subcontractors could still purchase their own workers' compensation insurance, the CCIP was "intended to be the primary source of coverage" and would "assume primary position to Subcontractors' insurance in the covered areas of risk."

¶5　Safway was one such subcontractor included in the CCIP. On June 9, 2009, Safway signed a CCIP Enrollment Form and an Insurance Calculation Form. Safway listed under the "Work Description" heading that it would "erect and dismantle

scaffolding." Safway received a certificate of liability insurance on August 27, 2010.

¶6   Safway signed the Insurance Calculation Form that twice references the CCIP manual, which in turn requires all participating subcontractors to "compl[y] with the terms and conditions of the Jacobsen City Creek Center CCIP Manual and the Jacobsen City Creek Center Safety and Health Manual."

¶7   Rick J. Nichols was an employee of Safway. On April 11, 2011, Mr. Nichols was severely injured while unloading scaffolding. On the morning of his injury, Mr. Nichols and another Safway employee drove to a construction site to unload scaffolding. Safway had reserved a forklift for the men to use to assist with the unloading, but when the men arrived at the site there was no forklift available. A Jacobsen employee demanded that the men unload the scaffolding by hand because "the project was behind schedule." Mr. Nichols stayed on the ground while the other Safway employee climbed onto the truck's flatbed. Mr. Nichols began cutting the bands that held the individual scaffolding planks together in order to unload the planks. As Mr. Nichols was cutting through one of the bands, several planks came crashing down on him, with the weight of the impact snapping one of the bands of Mr. Nichols' hard hat.

¶8   After the accident, a Safway supervisor came to the site to take Mr. Nichols to speak with one of Jacobsen's safety supervisors. The Jacobsen supervisor told the Safway supervisor to take Mr. Nichols "wherever you want" for medical assistance because "he's not our employee." Mr. Nichols then filed a workers' compensation claim, but there is a dispute over who initially paid the benefits. Mr. Nichols alleges he initially filed the claim with Safway's insurance carrier, but Jacobsen claims it has paid from "day one and dollar one." It is undisputed, however, that Jacobsen has paid over $100,000 in benefits and continues to pay as losses accrue.

¶9   Mr. Nichols filed a negligence action against Jacobsen in the district court. Jacobsen argued that it was immune from tort liability based on the Utah Workers' Compensation Act's exclusive-remedy provision. The parties then agreed to stay discovery while Jacobsen moved for summary judgment on the question of whether it qualified for immunity under the "eligible employer" statute. *See* UTAH CODE § 34A-2-103(7)(f)(iii)(B). The statute required Jacobsen to establish that it had (1) "procure[d] work" that was "part or process of [its] trade or business," (2) "secure[d] the payment of workers' compensation benefits" for Mr. Nichols, and (3) created and maintained a "written workplace accident and injury reduction program that [met] the requirements" of the statute. *Id.*

3

¶10 The district court granted Jacobsen's motion for summary judgment. First, with respect to the "procuring work" requirement, the district court found in its order that Mr. Nichols did not provide the court with any "admissible factual or legal basis for th[e] assertion . . . [that] delivery of supplies on its face would seem not to qualify as procuring work that is part or process of [Jacobsen's] trade or business." Additionally, the court found that the "plain language of the statute seems to support the delivery of supplies [is] clearly in furtherance of [Jacobsen's] work." Second, with respect to "securing the payment" of workers' compensation benefits, the court found that Jacobsen met this requirement when it enrolled Safway as a subcontractor in its insurance program. And finally, with respect to the "workplace accident and injury reduction program" requirement, the court found that Jacobsen had submitted several documents demonstrating its compliance with the statute, and that although Mr. Nichols "question[ed] many of the facts surrounding these documents," he did not "produce[] any evidence of [Jacobsen's] failure to comply with the statutory mandates."

¶11 Mr. Nichols appealed to the Utah Court of Appeals, which affirmed on the first requirement (procuring the work), but reversed on the second requirement (securing the payment). *Nichols v. Jacobsen Constr. Co.*, 2014 UT App 201, 334 P.3d 514. The court concluded that there was a genuine dispute of fact as to whether Jacobsen secured the payment of Mr. Nichols' benefits, because the parties disputed whether Jacobsen paid the benefits from "day one and dollar one" or whether Safway initially secured the payment of the benefits, and Jacobsen stepped in at a later date. *Id.* ¶¶ 11–12. The court held that Jacobsen would not qualify for immunity "if a significant time passed" before Jacobsen started paying Mr. Nichols' benefits. *Id.* ¶ 13. The court of appeals did not address the third requirement that Jacobsen create and maintain a "written workplace accident and injury reduction program." *See* UTAH CODE § 34A-2-103(7)(f)(iii)(B)(III).

¶12 We granted certiorari on the issue of whether the "securing the payment" provision includes a timing requirement for actual payment of benefits, and the issue of the proper interpretation of the word "work." We have jurisdiction under Utah Code section 78A-3-102(3)(a).

## STANDARD OF REVIEW

¶13 On certiorari, we give the court of appeals' decision no deference and review its decision under a correctness standard. *Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.*, 2014 UT 13, ¶ 17, 325 P.3d 70; *Turner v. Univ. of Utah Hosps. & Clinics*, 2013 UT 52, ¶ 13, 310 P.3d

1212. We also review questions of statutory interpretation and the grant of summary judgment for correctness. *Monarrez v. UDOT*, 2016 UT 10, __P.3d__. "To the extent an issue involves a factual question, we 'view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party'"—in this case—Mr. Nichols. *Id.* ¶ 7 (citation omitted).

## ANALYSIS

¶14 As set forth in Utah Code section 34A-2-105(1), recovery under Utah's Workers' Compensation Act is an injured employee's "exclusive remedy against the employer[,] . . . in place of any and all other civil liability whatsoever, at common law or otherwise." This exclusive remedy provision has been extended to general contractors who qualify as "eligible employers" and meet certain requirements of the statute. Utah Code section 34A-2-103(7)(f)(i) defines an "eligible employer" as an employer who "procures work to be done wholly or in part for the employer by a contractor, including . . . all subcontractors under the contractor . . . [and] all persons employed by any of these subcontractors." Then, in order for an "eligible employer" to be considered an "employer" and be eligible for the exclusive remedy provision, a contractor must satisfy certain conditions. The contractor must (1) "procure[] work to be done that is part or process of [the contractor's] trade or business," (2) "secure[] the payment of workers' compensation benefits for the contractor or subcontractor," and (3) meet specific statutory requirements with regard to a "written workplace accident and injury reduction program." UTAH CODE §§ 34A-2-103(7)(f)(i), -103(7)(f)(iii)(B).

¶15 We conclude that Jacobsen qualifies as an eligible employer and has met the specific requirements of the statute. First, Jacobsen procured the work of Mr. Nichols' subcontractor Safway by entering into an agreement to erect and dismantle scaffolding for the City Creek project. Second, Jacobsen satisfied the statutory requirements for securing the payment of workers' compensation benefits by enrolling Safway in the CCIP. Third, Jacobsen fulfilled the statutory requirements regarding the workplace accident and injury reduction program.

## I. UNDER THE PLAIN MEANING OF THE STATUTE, JACOBSEN PROCURED THE "WORK" OF SAFWAY AND ITS EMPLOYEES AS PART OF JACOBSEN'S "TRADE OR BUSINESS"

¶16 Before a contractor may qualify for immunity under this particular statute, it must satisfy a threshold condition that it qualifies as an "eligible employer." This requires the contractor to

prove that it "procures work to be done wholly or in part for the employer." UTAH CODE § 34A-2-103(7)(f)(i)(B). The contractor must additionally show that it procures this work as "part or process" of its "trade or business." *Id.* § 103(7)(f)(iii)(B)(II). The parties agree that Jacobsen "procured" something from Safway, but disagree as to the proper interpretation of the word "work."

¶17  When we interpret a word within a statute, we first consider its plain meaning. *J.M.W. v. T.I.Z. (In re Adoption of Baby E.Z.)*, 2011 UT 38, ¶ 15, 266 P.3d 702. In looking to determine "the ordinary meaning of nontechnical terms of a statute, our 'starting point' is the dictionary." *Rent-A-Center W., Inc. v. Utah State Tax Comm'n*, 2016 UT 1, ¶ 15, 367 P.3d 989 (citation omitted). If not "'plain' when read in isolation, [a word] may become so in light of its linguistic, structural, and statutory context." *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 9, 248 P.3d 465.

¶18 The word "work" is defined as "[p]hysical and mental exertion to attain an end, esp[ecially] as controlled by and for the benefit of an employer; labor." *Work*, BLACK'S LAW DICTIONARY (9th ed. 2009). At the time of his injury, Mr. Nichols was unloading scaffolding. Mr. Nichols therefore argues that Safway was a mere supplier and argues that Jacobsen procured only materials from Safway, urging us to adopt a definition of "work" that would limit it to labor and would not include the mere supplying of materials.

¶19 Jacobsen disagrees with the characterization of Safway as a mere supplier, and points to Safway's CCIP enrollment agreement in which Safway wrote in the "Work Description" section that it would "erect and dismantle" scaffolding.[1] The court of appeals resolved this disagreement in favor of Jacobsen and determined that "unloading equipment for a construction project, even without any additional responsibilities, readily falls under the plain meaning of

---

[1] Mr. Nichols argues that language in Jacobsen's CCIP Manual specifically excludes from "work" the supplying of materials. Indeed, the CCIP Manual does state that "[n]o insurance coverage provided by [Jacobsen] under the CCIP shall extend to the activities or products of suppliers . . . ." However, the CCIP Manual qualifies "suppliers" by including the words "whose employee(s) perform *no on-site work* or are engaged *solely* in the loading, unloading, stocking, testing or hauling of equipment, supplies or materials." (emphasis added.) Given that Safway's work was to entail not only supplying but also erecting and dismantling scaffolding, Safway employees were clearly anticipated to be on-site and engage in more than solely unloading scaffolding supplies.

the word 'work.'" *Nichols v. Jacobsen Const. Co.*, 2014 UT App 201, ¶ 9, 334 P.3d 514.

¶20 We agree that the appropriate interpretation of "work" favors Jacobsen. Applying the plain meaning of "work" here, supplying, erecting, and dismantling of scaffolding would necessarily require the physical and mental exertion of Safway employees, which exertion would be controlled by and for the benefit of Jacobsen. Additionally, the fact that at the time of his injury Mr. Nichols was unloading scaffolding materials is irrelevant. This is because the question here is not about what particular task an individual employee of a subcontractor is doing at any given moment while on the job. Rather, the proper question is about the work that was procured by a contractor from a subcontractor, and that work here included not only supplying, but also erecting and dismantling scaffolding.

¶21 Surrounding statutory language provides further support for this interpretation: the work procured is to be done "wholly or in part" as "part or process" of the employer's "trade or business." UTAH CODE § 34A-2-103(7)(f)(i)(B), -103(7)(f)(iii)(B)(II). Here, Jacobsen's "trade or business" was construction of the City Creek project. *Bennett v. Indus. Comm'n*, 726 P.2d 427, 431 (Utah 1986) ("The trade or business of a general contractor in the construction business is construction . . . ."). Safway's work was "part" of the construction "process" because it was "part of the operations which directly relate[d] to the successful performance of" Jacobsen's City Creek construction project. *Id.; accord Pinter Const. Co. v. Frisby*, 678 P.2d 305, 309 (Utah 1984) (the phrase "a 'part or process in [the employer's] trade or business' . . . includes 'those operations which enter[] directly into the successful performance of the commercial function of the principal employer'" (citation omitted)); *see also Rogers v. Hansen*, 317 N.W.2d 905, 908 (Neb. 1982) ("Obviously, the work of a subcontractor is ordinarily within the usual course of business of the principal contractor . . . .").

¶22 Because Safway's supplying, erecting, and dismantling of scaffolding was "work" procured by Jacobsen to be done "wholly or in part" as "part or process" of Jacobsen's "trade or business," Jacobsen is an "eligible employer" for purposes of the exclusive remedy provision, and the court of appeals properly concluded that Jacobsen "procures work" as required by Utah Code section 34A-2-103(7)(f)(iii)(B)(II).

## II. THE COURT OF APPEALS INCORRECTLY CONCLUDED THAT THERE WAS A QUESTION OF FACT AS TO WHETHER JACOBSEN "SECURED" THE PAYMENT OF WORKERS' COMPENSATION BENEFITS FOR MR. NICHOLS

¶23 The second condition a contractor must satisfy in order to be eligible for the exclusive remedy provision is that the contractor must "secure[] the payment of workers' compensation benefits for the contractor or subcontractor." UTAH CODE § 34A-2-103(7)(f)(iii)(B)(I). The parties disagree about two things: first, what satisfies this condition—whether a contractor must provide workers' compensation insurance or must make actual payment of the benefits; and second, whether Jacobsen properly insured Safway and its employees.

*A. An Employer "Secures the Payment" of Workers' Compensation Benefits When it Provides its Subcontractors and Their Employees with a Qualifying Insurance Policy*

¶24 We first turn to the question of whether an employer "secures the payment of worker's compensation benefits" by providing workers' compensation insurance coverage or whether it must make actual payment of workers' compensation benefits. Mr. Nichols argues that the statute requires a contractor to actually pay the workers' compensation benefits itself. However, there is no language to support such a requirement. Rather, the language of the statute plainly states that the provision of workers' compensation *insurance* is what is required in order to "secure the payment of" workers' compensation benefits.

¶25 Section 34A-2-103(7)(f)(iii)(B)(I) states that the required "payment of workers' compensation benefits" is to be secured "pursuant to Section 34A-2-201." In turn, section 34A-2-201 provides three alternative methods of securing the payment, one of which states that "[a]n employer shall secure the payment of workers' compensation benefits for its employees by . . . insuring, and keeping insured, the payment of this compensation" either through the Workers' Compensation Fund or through another authorized workers' compensation insurance provider in Utah. This provision thus "imposes an unconditional obligation on employers to be properly *insured*." *Thomas A. Paulsen Co. v. Indus. Comm'n*, 770 P.2d 125, 127 n.4 (Utah 1989) (emphasis added). "The duty, therefore, imposed on the employer by this section is merely to provide a qualifying insurance policy." *Smith v. Am. Express Travel-Related Servs.*, 765 F. Supp. 1061, 1064 (D. Utah 1991) (holding that securing the payment does not require an employer to be the guarantor of an employee's actual receipt of benefit payments). The employer

therefore is required to "insure" the securing of the payment, not "ensure" that the actual payment is made.

¶26 The structure of the statute further supports the conclusion that the provision of workers' compensation insurance, and not actual payment of the benefits themselves, is the requirement. Section 34A-2-103(7)(f)(iii) provides for three alternative ways in which a contractor, as an eligible employer, can qualify for the exclusive remedy provision. First, under subsection (A), an eligible employer will qualify if it "is liable for and *pays* workers' compensation benefits as an original employer . . . because the contractor or subcontractor fails to comply with" the statutory requirement to maintain those benefits. UTAH CODE § 34A-2-103(7)(f)(iii)(A) (emphasis added). The second alternative, under subsection (B), is the only one that Jacobsen relies upon in this case, and requires simply "securing" the payment of benefits. The third alternative, under subsection (C), also lists as one of its requirements that the contractor is liable for "*payment* of workers' compensation benefits if the contractor or subcontractor fails to comply with" the statutory requirement to maintain those benefits. *Id.* § 34A-2-103(7)(f)(iii)(C)(II) (emphasis added). In only one of these subsections did the legislature choose to state that an eligible employer must *secure* the payment of benefits—Section 34A-2-103(7)(f)(iii)(B). The United States Supreme Court has stated that a legislative body "generally acts intentionally when it uses particular language in one section of a statute but omits it in another," which canon applies with "particular force" when such statutory language is "in close proximity." *Dep't of Homeland Sec. v. MacLean*, 135 S. Ct. 913, 919 (2015). The interpretation of "securing the payment" most consistent with that canon and with our goal of supporting the legislature's purpose and intent is that a contractor must simply maintain a valid insurance policy meeting the statutory requirements, not that the contractor must guarantee that a subcontractor applies for and receives insurance benefits.

¶27 Based on all of the foregoing, we hold that in order to "secure[] the payment of workers' compensation benefits" under Section 34A-2-103(7)(f)(iii)(B)(I), an eligible employer must obtain and maintain workers' compensation insurance as provided in Section 34A-2-201, and that evidence of actual payment of benefits is not required.

*B. Jacobsen Secured the Payment of Workers' Compensation Benefits when It Enrolled Safway in Its CCIP Insurance Program and Maintained the Coverage Throughout Safway's Contract*

¶28 In this matter, the court of appeals reversed the grant of summary judgment to Jacobsen. We must therefore determine whether there is a genuine dispute of any material fact that would preclude summary judgment. The record shows that Safway enrolled in Jacobsen's CCIP program starting in June 2009. According to the CCIP, the workers' compensation policy covering Safway and its employees would be issued upon review by the CCIP administrator of Safway's enrollment forms and completion of the procedures specified in the CCIP. Safway received a certificate of insurance coverage on August 27, 2010, several months before Mr. Nichols' accident.

¶29 Mr. Nichols alleges that he first received workers' compensation payments through Safway's separate workers' compensation policy, and that only later did Jacobsen voluntarily elect to take over the payment of his claims. But Mr. Nichols' argument is immaterial. There is no indication anywhere in the statute that an employer must exercise control over how quickly — or even whether — its insurer recognizes the existence of a claim and begins making payments. Indeed, there is no statutory language addressing this issue in any way. Whether an employee of a subcontractor files a claim with that subcontractor's separate workers' compensation insurance provider or with the general contractor's workers' compensation insurance provider, and whether and when either provider then makes payment of benefits to the employee, are entirely separate issues from the question of whether the general contractor had a workers' compensation insurance policy in place that covered the subcontractor and its employees.[2]

¶30 We conclude the undisputed facts show that Jacobsen properly insured Safway and its employees under the CCIP,

---

[2] If Mr. Nichols had applied for workers' compensation benefits through Jacobson, presumably he would have been covered. The circumstances wherein a Jacobsen employee purportedly misinformed Mr. Nichols may have complicated the situation in terms of Mr. Nichols' expectations, but it is irrelevant as to whether Safway and its employees were covered under the CCIP policy. The purported misinformation does not negate everything Jacobsen did to comply with the statute, and does not mean that Jacobsen did not properly "secure the payment" of benefits for Safway and its employees.

therefore fulfilling the "securing the payment" requirement necessary to satisfy the second condition of the exclusive remedy provision, and we therefore reverse the court of appeals' decision on this point.

### III. JACOBSEN MEETS THE WORKPLACE ACCIDENT AND INJURY REDUCTION PROGRAM'S STATUTORY REQUIREMENTS

¶31 The third major requirement for an eligible employer to be able to rely on the exclusive remedy provision is that the employer must meet several requirements with respect to a "written workplace accident and injury reduction program." UTAH CODE § 34A-2-103(7)(f)(iii)(B)(III). The district court found for Jacobsen on this issue; noting that Jacobsen had submitted documents demonstrating its compliance with the statute, and although Mr. Nichols questioned "many of the facts surrounding these documents," he did not "produce[] any evidence of [Jacobsen's] failure to comply with the statutory mandates."

¶32 The court of appeals did not address this statutory requirement, presumably because it found a material dispute of fact as to whether Jacobsen's alleged untimely payments were consistent with "securing" the payment of benefits for Mr. Nichols, and this was enough to remand the case for trial. Although the parties did not ask this court to review this issue in their petition and cross-petition for certiorari, Mr. Nichols addressed it in his reply brief, arguing that this court could alternatively affirm the court of appeals' remand on this ground. At oral argument, Jacobsen agreed that we have the power to decide this issue and asked this court to reach the issue here rather than remand to the court of appeals. At this court's request, Mr. Nichols then submitted a supplemental brief on the workplace accident and injury reduction program issue.

*A. We May Decide Whether Jacobsen Has Met the Safety Program Requirements, Despite the Court of Appeals Not Addressing This Question*

¶33 While it is true that "[r]eview on certiorari is limited to examining the court of appeals' decision and is further circumscribed by the issues raised in the petitions," *Coulter & Smith, Ltd. v. Russell*, 966 P.2d 852, 856 (Utah 1998), this does not limit our power to review questions decided by the district court and not reached by the court of appeals, where those questions are fully briefed and fairly included within the issues being decided upon by this court. *See* UTAH R. APP. P. 49(a)(4) ("Only the questions set forth in the petition *or fairly included therein* will be considered by the Supreme Court. . . . The statement of a question presented will be

deemed to comprise every subsidiary question fairly included therein." (emphasis added)); *cf. State v. James*, 819 P.2d 781, 795 (Utah 1991) ("Issues that are fully briefed on appeal and are likely to be presented on remand should be addressed by this court." (citation omitted)).

¶34 In this case, the court of appeals was asked to determine whether the district court correctly found that Jacobsen met the three requirements to qualify for the exclusive remedy provision under Utah Code section 34A-2-103(7)(f)(iii)(B). In answering this overarching question, the court of appeals did not reach the requirement included within this section. As both parties fully briefed this requirement to the court of appeals and to this court, and we conclude this is a subsidiary question fairly included within the larger question of Jacobsen's eligibility for the exclusive remedy provision, we will decide this issue on the merits.

### B. The Record Is Sufficient to Determine That Jacobsen Met the Requirements of the Statute

¶35 A contractor's written workplace accident and injury reduction program (Safety Program) must meet several statutory requirements. First, the contractor must adopt, post, and enforce a Safety Program that complies with Utah Code section 34A-2-111(3)(d). *Id.* § 34A-2-103(7)(f)(iii)(B)(III). Section 111(3)(d), in turn, may be broken down into twelve requirements for a qualifying Safety Program.[3] The Safety Program must:

(1) be "based on clearly stated goals and objectives for meeting those goals";

(2) "promote[] safe and healthful working conditions";

(3) include a "documented review" at least semiannually describing how goals are met;

(4) describe "how managers, supervisors, and employees are responsible for implementing" the Safety Program;

(5) describe "how continued participation of management will be established, measured, and maintained";

(6) describe "the methods used to identify, analyze, and control new or existing hazards, conditions, and operations";

---

[3] Although the statute expresses some of these requirements permissively, subsection (3)(d) is clear that if an employer is relying on the "eligible employer" provision—section 34A-2-103(7)(f)—the Safety Program *must* include all twelve requirements as outlined in this opinion. *See* UTAH CODE § 34A-2-111(3)(d).

(7) describe how it will be "communicated to all employees so that the employees are informed of work-related hazards and controls";

(8) describe "how workplace accidents will be investigated and corrective action implemented;

(9) describe "how safe work practices and rules will be enforced";

(10) include a "written agreement" that gives the eligible employer the "right to control the manner or method by which the work is executed";

(11) include a "written agreement" that gives the contractor the right to "remove the subcontractor from the work site," or prohibit an employee from working on the project, based on noncompliance with the Safety Program; and

(12) include a "written agreement" that gives the employer the right to "inspect on a regular basis the equipment of a contractor or subcontractor," and to "require that the contractor or subcontractor repair, replace, or remove" unsafe equipment.

*Id.*

¶36 Once again, we are tasked with determining whether the district court correctly granted Jacobsen's motion for summary judgment. Before we can reinstate summary judgment, we must be able to conclude that the undisputed facts show that summary judgment was proper. We have carefully reviewed the statute, the record, and each party's arguments and counter-arguments, and conclude that the undisputed facts show that Jacobsen has complied with all statutory requirements.[4] Although Mr. Nichols asserts that

---

[4] We note there is a lacuna in the record as to whether Jacobsen "posted" the safety program on site, as evidence of this requirement was not submitted in discovery and Jacobsen's safety supervisor Mark Chavez failed to address this requirement in his affidavit. However, given that the parties agreed to limited discovery and Jacobsen's otherwise overwhelming demonstration of conformity with the statute, we conclude it would defeat the legislature's purpose of "reduc[ing] litigation and improv[ing] the coverage for otherwise uninsured contractors" to reverse summary judgment on this singular and minor uncertainty. *See supra* Part I.

Jacobsen did not comply with several requirements, most of Mr. Nichols' arguments stem from three mistaken assumptions.[5]

¶37 First, Mr. Nichols asserts that although Safway signed the CCIP Enrollment Form and Insurance Calculation Form, Safway never signed the CCIP manual or the Safety and Health Manual directly, and therefore presumably did not have notice of the documents' terms. Mr. Nichols argues that as a consequence, all the provisions in those documents are not binding on Safway. We disagree. Although it would be administratively preferable for a contractor to have its subcontractors sign one incorporated document containing all of the statutory requirements, it is enough that the subcontractor signs a document that incorporates by reference the other necessary documents. Safway signed the Insurance Calculation Form that references two different provisions of the CCIP Manual, and the CCIP Manual in turn explicitly binds subcontractors to the terms of both the CCIP Manual and the Safety and Health Manual. Therefore, we reject Mr. Nichols' arguments that there was no "written agreement."

¶38 Second, Mr. Nichols asserts that even if Safway agreed to the terms of the CCIP Manual and the Safety and Health Manual, the manuals' provisions are inapplicable to a "mere supplier" who performs no on-site work. As we have already concluded that Safway was not a mere supplier, but rather was hired to "erect and dismantle" scaffolding, this argument fails. Additionally, the statute is not directed to the manner in which a subcontractor participates in the Safety Program, but rather to the establishment of the contractor's Safety Program overall.

¶39 Third, Mr. Nichols asserts that Jacobsen did not have the "right to control the manner or method by which the work is executed." UTAH CODE § 34A-2-111(3)(d)(ii)(A). Mr. Nichols opines that Jacobsen did not include this right so as to not open itself up to "retained control" claims. *See Thompson v. Jess*, 1999 UT 22, ¶ 15, 979 P.2d 322 (defining "retained control" as the "unique circumstance where an employer of an independent contractor exercises enough control over the contracted work to give rise to a limited duty of care, but not enough to become an employer or a master of those over whom the control is asserted").

---

[5] Although Mr. Nichols disputes the evidence with respect to each of the individual requirements, many of these arguments may be combined into the three main arguments which we will address and clarify here. For any remaining arguments, we conclude there is no a genuine dispute of material fact and therefore decline to address them.

¶40 Jacobsen has pointed to several ways in which it had the right to control the method or manner of its subcontractors' work. For example, *inter alia*, the Safety and Health Manual required all enrolled subcontractors to have an on-site safety supervisor present at all times while work was being performed for Jacobsen. Jacobsen maintained discretion to remove any person from the City Creek project not in compliance with the Safety and Health Manual. Jacobsen required all visitors to check-in with a Jacobsen receptionist before entering the site. And finally, Jacobsen reserved the right to require its subcontractors to increase general liability control measures if Jacobsen determined that existing measures were inadequate.

¶41 We conclude as a matter of law that Jacobsen satisfied the "right to control" test. As the foregoing evidence in the record makes clear, Jacobsen went above and beyond the "right to control" that the statute requires. We note that the traditional "right to control" test is not appropriate in the context of whether Jacobsen qualifies for immunity under the eligible employer statute. *See Pinnacle Homes, Inc. v. Labor Comm'n*, 2007 UT App 368, ¶ 20, 173 P.3d 208. In the workers' compensation context, right to control "requires only that the general contractor retain ultimate control over the project." *Bennett v. Indus. Comm'n*, 726 P.2d 427, 432 (Utah 1986). If the contractor has shown that its "subcontractor's work is a part or process of the general contractor's business, an inference arises that the general contractor has retained supervision or control over the subcontractor." *Id.* We have already determined that Safway's work erecting and dismantling scaffolding was "part or process" of Jacobsen's business, *see supra* Part I, and Jacobsen has additionally demonstrated its ability to control its subcontractors according to the terms of its Safety and Health Manual. Therefore, Jacobsen has met its burden to show it maintained the right to control Safway and, accordingly, Mr. Nichols. We conclude Jacobsen has met all of the statutory requirements.

### CONCLUSION

¶42 Jacobsen qualifies for the exclusive remedy provision of the Workers' Compensation Act and is thus immune from Mr. Nichols' negligence action. Jacobsen satisfied the threshold condition of being an "eligible employer" by procuring work from Safway to be done as part of its construction business. As an eligible employer, Jacobsen has successfully shown that it qualifies as an "employer" for purposes of the exclusive remedy provision and thus is immune from suit by (1) "securing the payment" of workers' compensation benefits through enrolling Safway in its insurance program and

maintaining that insurance, and (2) showing that it created and maintained a workplace safety and accident program that meets all of the statutory requirements. We therefore affirm in part and reverse in part the court of appeals' opinion, thereby affirming in whole the decision of the district court.

———————