Raymond J. WESLEY, Appellant,

v.

**BOARD OF EDUCATION OF NICHOLAS COUNTY et al., Appellees.**

Court of Appeals of Kentucky.

May 20, 1966.

Ben B. Fowler, Dailey & Fowler, Frankfort, for appellant.

John C. Anggelis, Lexington, for appellees.

DAVIS, Commissioner.

Appellant Raymond J. Wesley was ousted from his position as superintendent of schools of Nicholas County by a four to three vote of the appellee Board of Education of Nicholas County. KRS 160.350. He brought this action in the Nicholas Circuit Court asserting that the Board's action was illegal, but the judgment there was adverse

to him; this appeal is from that adverse judgment.

Several purported grounds for reversal are presented, but our view of the case makes it necessary to consider only one of them, namely, whether a bare majority of the Board (four of seven members) was authorized to oust the appellant.

Except when boards of education are merged, and then only for an interim period, the membership of any board of education in this state is fixed at five by KRS 160.160. When an independent school district is merged with a county district, as authorized by KRS 160.040, the respective members of the merging boards may serve to completion the terms for which they were elected. Prior to this litigation the Carlisle Independent Board of Education and the Board of Education of Nicholas County were merged by appropriate action of the two boards. For a time the members of both boards comprised the new Board of Education of Nicholas County, with a total of ten persons on the new board.

The ouster charges were filed against appellant at a time when the total membership of the board had fallen to seven by reason of expiration of the terms of three of the members of the former Carlisle Independent Board. The hearing on the ouster charges was conducted by the seven-member board, and the ouster ordered by a vote of four to three of those seven.

KRS 160.350 embraces the legislative procedure whereby an ouster of a superintendent of schools may be accomplished. Among other things, the cited section provides:

"A superintendent of schools may be removed for cause by a vote of four members of a board of education." (KRS 160.350).

It is the appellant's contention that the requirement of four affirmative votes before ouster may be had reflects a legislative intent that more than a bare majority of the board's membership must concur to effect an ouster. Since the usual board has five members, it would follow that 80% of the board's membership must vote to oust the superintendent before ouster may be effective.

Countering this, the appellees urge that "four" means "four." Therefore, it is reasoned by appellees, so long as four members of a board constitute a majority of the board, a consensus by four to oust is enough.

It must be conceded that respectable arguments may be had for either side of the question at hand. After careful consideration we are persuaded that the appellant's position is the sound and proper one. Without undertaking an exhaustive exegesis of the arguments pro and con, we briefly summarize the bases for our conclusion.

Since the question before us involves statutory construction we initiate our inquiry from the fundamental touchstone that the will or intent of the legislature must be a pole star to guide us. Cf. Smith v. Wilson, Ky., 269 S.W.2d 255; Davis v. Commonwealth Life Ins. Co., Ky., 284 S.W.2d 809, 54 A.L.R.2d 1286; Gateway Const. Co. v. Wallbaum, Ky., 356 S.W.2d 247. We think it is not debatable that *ordinarily* a bare majority of votes is sufficient to officially determine the action of a board or other parliamentary body in a democratic system. Yet, in the case of ouster of a superintendent of schools by a board of education (KRS 160.350) the legislature has specifically required that 80% of the usual five-member board must agree before ouster can be completed. Why?

We think the answer is to be found in the legislature's recognition of the need for assuring stability in the administration of public school affairs. All will agree that the office of county school superintendent is of great significance and public concern. It is substantially impossible for the individual members of the board to obtain the

familiarity with the myriad of school problems which the superintendent must have if he is to perform his task efficiently. Except in rare instances, the superintendent is possessed of professional training and experience in school matters far beyond that of the board members. (Consider the statutory qualifications for any school superintendent vis-a-vis those for board members. KRS 160.350; 160.180). School administration, usually equated in the public's mind with the person of the superintendent, necessarily encompasses controversial matters. That these controversies are often volatile and colored by sectional and personal interests is too well known to deny. These periods of displeasure, fortunately, usually are not long-lasting. We think the legislature evinced its awareness of these facts of life, and placed a safety-valve in KRS 160.350 designed to guard against precipitate "firing" of school superintendents.

It is certain that the legislature required four votes (80%) of a five-member board to dismiss a school superintendent. Is there any reasonable basis to suppose that the legislature intended that a bare majority should possess the ouster power as respects a board having more than five members? We are not able to perceive one. Indeed, during the transition period accompanying merger, there are many reasons to suggest that more than ever there exists a need for the 80% requirement. It is during this interim that the "merged" members know that they will not be able to seek election in the same familiar territorial boundary; that half of them will not be members of the board when the temporary "merged" status is completed.

Without further belaboring the point, we think there is no sound basis for concluding that the legislature used "four" in KRS 160.350 to mean "four" in case of all-sized boards. Rather, it is our view that the "four" there means "80%"—which is the ratio it bears to the normal five-member board. The statutes do not advert to the ouster procedure required in boards having more than five members. The construction urged by appellees would lead to the result that 80% of the votes must concur to oust the superintendent in five-member board cases (the predominant and usual situation) while requiring only four of seven (slightly more than 57%) in the case at bar. In our view this would lead to an unreasonable result. We have often said that statutes will not be given a strict or literal reading where to do so would lead to an absurd or unreasonable conclusion. Cf. Commonwealth of Ky., Dept. of Highways v. Wilkins, Ky., 320 S.W.2d 125; Kentucky Mountain Coal Company v. Witt, Ky., 358 S.W.2d 517; Jefferson County Board of Election Com'rs v. Russell, Ky., 323 S.W.2d 864.

The judgment is reversed, with directions to enter a new judgment rescinding the ouster order.