**AK STEEL CORPORATION,**
**Appellant,**

v.

**COMMONWEALTH of Kentucky,**
**Revenue Cabinet, Appellee.**

**No. 2001–CA–001970–MR.**

Court of Appeals of Kentucky.

Sept. 6, 2002.

William H. Jones, Jr., Leigh Gross Latherow, VanAntwerp, Monge, Jones & Edwards, Ashland, KY, William P. Curlin, Jr., Hazelrigg & Cox, Richard S. Taylor, Frankfort, KY, for Appellant.

Thomas J. Hodge, Division of Legal Services, Revenue Cabinet, Frankfort, KY, for Appellee.

Before BUCKINGHAM, HUDDLESTON and JOHNSON, Judges.

### OPINION

HUDDLESTON, Judge.

AK Steel Corporation appeals from a Franklin Circuit Court judgment that held that a statutory sales/use tax exemption for materials, supplies and repair and replacement parts purchased for use in the steel-making process expired in 1994.

This agreed case was submitted for decision by the circuit court pursuant to Kentucky Revised Statutes (KRS) 418.020.[1] The court was asked to interpret KRS 139.480(12), one of several subsections of KRS 139.480 which exempt various types of property from sales and use taxes. Subsection (12) provides that the following property shall be exempt from such taxes:

---

1. Ky.Rev.Stat. (KRS) provides that:

Parties to a question which might be the subject of a civil action may, without action, state the question and the facts upon which it depends, and present a submission thereof to any court which would have jurisdiction if an action had been brought.

But it must appear by affidavit that the controversy is real, and the proceedings in good faith, to determine the rights of the parties. The court shall, thereupon, hear and determine the case, and render judgment as if an action were pending.

Property which has been certified as a pollution control facility as defined in KRS 224.01–300, and all materials, supplies, and repair and replacement parts purchased for use in the operation or maintenance of the facilities used specifically in the steel-making process. The exemption provided in this subsection for materials, supplies, and repair and replacement parts purchased for use in the operation of pollution control facilities shall be effective for sales made through June 30, 1994[.]

The circuit court was asked to decide two questions:

1. Does the June 30, 1994, sunset provision of KRS 139.480(12) apply to the exemption for "all materials, supplies and repair and replacement parts purchased for use in the operation or maintenance of the facilities used specifically in the steel-making process"?

2. If the June 30, 1994, sunset provision does not apply to the exemption for "all materials, supplies and repair and replacement parts purchased for use in the operation or maintenance of the facilities used specifically in the steel-making process," does this exemption require that the facilities be certified as pollution control facilities?

The circuit court read the statutory language to mean that any exemption provided for materials, supplies and repair and replacement parts purchased for use in the operation or maintenance of the facilities used specifically in the steel-making process expired on June 30, 1994.

When analyzing a statute, we must interpret statutory language with regard to its common and approved usage.[2] In so doing, we must refer to the language of the statute rather than speculating as to what may have been intended but was not expressed.[3] In other words, a court "may not interpret a statute at variance with its stated language."[4] Therefore, any statutory analysis must begin with the plain language of the statute. In so doing, however, our ultimate goal is to implement the intent of the legislature.[5]

At the heart of this dispute is whether an amendment to the statute enacted in 1990 created a new exemption from sales and use taxes. While the Revenue Cabinet argues that the amendment was made to extend the sunset date and to "clean up" the statute and make its language clearer, it appears that the General Assembly's efforts had the opposite effect. As will be explained below, the amendment changed what had been a clear and unambiguous statute and made it sufficiently ambiguous to spawn the present controversy.

Prior to its amendment in 1990, the relevant subsection of KRS 139.480 provided a sales and use tax exemption for

[p]roperty which has been certified as a pollution control facility as defined in KRS 224.850[[6]] and all materials, supplies, and repair and replacement parts purchased for use in the operation of maintenance of such facilities used specifically in the steel-making process. The exemption provided in this subsec-

---

**2.** KRS 446.080.

**3.** *Commonwealth v. Allen*, Ky., 980 S.W.2d 278, 280 (1998).

**4.** *Id.* (citation omitted). *See also Gurnee v. Lexington–Fayette Urban County Government*, Ky.App., 6 S.W.3d 852, 856 (1999).

**5.** *See Wesley v. Board of Education of Nicholas County*, Ky., 403 S.W.2d 28, 29 (1966).

**6.** The relevant definition is currently codified at KRS 224.01–300.

tion for materials, supplies, and repair and replacement parts purchased for use in the operation of pollution control facilities shall be effective for sales made through June 30, 1991.

During the 1990 session of the General Assembly, the sunset provision above was extended until 1992. At the time that change in the statute was implemented, the legislature replaced the phrase "such facilities used specifically in the steel-making process" with "the facilities used specifically in the steel-making process." While the Revenue Cabinet argues that "such" and "the" can be used interchangeably, AK Steel argues that the substitution changes the meaning of the sentence. However, both sides are in agreement that in the prior version of the statute, use of the term "such" before "facilities" clearly indicated that the "facilities" referred to were those previously mentioned, i.e., "pollution control facilities." The Revenue Cabinet argues that that is still what is being referenced in the statute, while AK Steel argues that the new version of the statute creates an exemption for "the facilities used in the steel-making process." In order to resolve the conflict, we must analyze the meaning of the word "the." [7]

*Webster's Third New International Dictionary*[8] begins its definition of the word "the" as follows:

> definite article [ ]—used as a function word to indicate that a following noun or noun equivalent refers to someone or something previously mentioned or

clearly understood from the context or situation[.]

Likewise, the *Encarta World English Dictionary*[9] begins its entry for "the" with the following:

> CORE MEANING: an adjective, the definite article, used before somebody or something that has already been mentioned or identified, or something that is understood by both the speaker and hearer, as distinct from "a" or "an[.]"

Under either of the above definitions, "the facilities" referenced in the second half of the first sentence of KRS 139.480(12) refers to the facilities already mentioned or identified, i.e., "[p]roperty which has been certified as a pollution control facility as defined in KRS 224.01–300[.]" Under that definition, the statute provides exemptions for (1) property certified as a pollution control facility, and (2) all materials, supplies, and repair and replacement parts purchased for use in the operation or maintenance of certified pollution control facilities used in the steel-making process. Therefore, under this definition, the second exemption was effective (as a result of a second amendment to the statute) for sales made through June 30, 1994. This is the position advocated by the Revenue Cabinet.

However, there is another possible meaning of the word "the" as used in the current version of KRS 139.480(12). Specifically, one of the entries in *The Oxford English Dictionary*[10] presents "the" as "a

---

7. This is not the first time a judicial body has been presented with the surprisingly difficult task of discerning the meaning of a monosyllabic word of repeated, everyday usage. Indeed, one cannot help but recall the Zen-like musings of the former President of the United States, William Jefferson Clinton, who presented a grand jury with the imponderable: "It depends on what the meaning of the word 'is' is. If the-if he-if 'is' means is and never

has been, that is not-that is one thing. If it means there is none, that was a completely true statement." *See Bartlett's Familiar Quotations* (17th ed.2002).

8. Mirriam–Webster, Inc., 1993.

9. Bloomsbury Publishing Plc, 1999.

10. Second Edition, 1994.

definite article ... marking an object not before mentioned, but now identified by a clause, phrase, or word." The modern usage of "the" using this definition "with an object particularized by a participle" is exemplified by the phrase "[t]he book lying on your table." [11] Using this definition in the present case would result in an interpretation of KRS 139.480(12) which reads "the facilities" as referring to something separate from the earlier-mentioned "pollution control facilities;" in this instance, "the" is a definite article whose object is "facilities" which is particularized by the participle phrase "used specifically in the steel-making process." Read this way, the statute would create separate, independent exemptions for (1) certified pollution control facilities, and (2) all materials, supplies, and repair and replacement parts purchased for use in the operation or maintenance of any facility (pollution controlling or otherwise) used specifically in the steel-making process. Under this reading, presumably the exemption for pollution control facilities was effective for sales made through June 30, 1994, while the exemption for steel-making materials, supplies, and replacement parts has no sunset provision and remains a viable exemption. There is something of a logical inconsistency in this argument, however, in that the sunset provision explicitly applies to materials, supplies, and repair and replacement parts purchased for use in pollution control facilities, but under this reading of the statute, there is no such exemption explicitly provided by the first sentence of the subsection.

■ Because the statute is ambiguous, we are required to look outside the plain language of the statute to discern legislative intent.[12] Since 1955, the Legislative Research Commission (LRC) has issued a Bill Drafting Manual to assist LRC employees and members of the General Assembly in drafting pieces of legislation. Section 306 of that manual advises "[a]void using the word 'such' as an adjective where an article or demonstrative pronoun may be used." [13] Likewise, KRS 13A.222, which provides legislative guidance for the drafting of regulations by state administrative agencies, contains the direction in subsection (4)(c): "[w]here an article may be used, the administrative body shall not use the word 'such.'" Clearly, the General Assembly has a preference for the use of the definite article "the" over "such."

As AK Steel correctly points out, there are several usages of the word "such" in similar revenue statutes that could not be changed to "the" without significantly altering the meaning of the particular subsection.[14] Clearly, the words "such" and "the" are not always interchangeable.

However, in the case at hand, we interpret the revised version of KRS 139.480 to maintain the meaning of its predecessor. Based on the legislative preference for the word "the" over "such," and the seeming unlikeliness that the General Assembly intended to add a new exemption to a statute which was otherwise simply being amended to lengthen its sunset provision, we do not think it intended to significantly alter the statute. Likewise, if "the" is read to substantively change the nature of the exemptions provided, the sunset provision would not clearly apply to either exemp-

11. *Id.*

12. *See generally, Wesley v. Nicholas County Bd. of Educ., supra,* n. 5.

13. *Bill Drafting Manual,* Informational Bulletin No. 117, Legislative Research Commission (1997).

14. *See, e. g.,* KRS 132.060(1) and KRS 136.535(2).

tion, making that section of the statute illogical.

Accordingly, we hold that the sunset provision in KRS 139.480(12) applies to the exemption created in that subsection for materials, supplies and repair and replacement parts purchased for use in the operation of pollution control facilities and, like the circuit court, answer the parties' first question affirmatively, thus obviating the need to address the second question.

Therefore, the Franklin Circuit Court order is affirmed.

ALL CONCUR.