*This opinion is subject to revision before final publication in the Pacific Reporter*

**2017 UT 66**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JILLIAN SCOTT,
*Petitioner,*

*v.*

BRADLEY SCOTT,
*Respondent.*

No. 20160299
Filed September 21, 2017

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Judge Robert P. Faust
No. 124903563

Attorneys:

Michael D. Zimmerman, Bart J. Johnsen, Troy L. Booher,
Julie J. Nelson, Salt Lake City, for petitioner

Karra J. Porter, Kristen C. Kiburtz, Salt Lake City, for respondent

JUSTICE PEARCE authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM and JUDGE BROWN joined.

Having been recused, JUSTICE HIMONAS does not participate herein;
DISTRICT COURT JUDGE JENNIFER A. BROWN sat.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1    Jillian Scott petitions this court to overturn the Utah Court of Appeals' order affirming the district court's conclusion that she cohabited with her now ex-boyfriend and, therefore, her alimony payments terminated under Utah Code section 30-3-5(10). This requires us to revisit a question that captured the nation's attention in 1999 because the meaning of section 30-3-5(10) "depends upon

what the meaning of the word 'is' is." We conclude that the legislature intended that *is* should mean *is* and not *was* or *has been*. We reverse.

**BACKGROUND**

¶2    Jillian Scott (Wife) and Bradley Scott (Husband) divorced in 2006. Under the terms of their divorce settlement and decree, Wife would collect $6,000 a month in alimony from Husband for the number of years they had been married: twenty-five. The divorce decree provided, "Alimony shall terminate upon the remarriage or cohabitation of [Wife]."

¶3    In October 2011, Husband moved to terminate alimony, claiming that Wife had cohabited with J.O., her ex-boyfriend. Husband argued that Wife had begun "cohabit[ing] with an adult male . . . on or about February 2011," that Wife had a relationship with her cohabitant "akin to that generally existing between husband and wife," and that she and cohabitant "shared a common residence for a significant period of time." Wife and J.O. had broken up months before Husband filed his motion. The statutory language[1] governing termination of alimony provides that alimony "terminates upon establishment by the party paying alimony that the former spouse is cohabiting with another person." UTAH CODE § 30-3-5(10).[2]

---

[1] The court of appeals' opinion correctly noted:
> The parties' decree of divorce differs from the language contained in Utah Code section 30-3-5(10). . . . However, the parties have presented this case as though the statutory language governs the result, and for purposes of this analysis we assume that the parties' decree is substantively identical to the statute on the issue of cohabitation.

*Scott v. Scott*, 2016 UT App 31, ¶ 9 n.2, 368 P.3d 133, *cert. granted*, 379 P.3d 1183 (Utah 2016). On *certiorari*, neither party contends that the language of the decree controls or that under the decree this court should reach a different result. We thus limit our analysis to the parties' arguments and do not consider the decree's language.

[2] The Utah statute employs the verb *cohabitate*. *See* UTAH CODE § 30-3-5(10). We, however, use the more common term *cohabit*

(continued . . .)

¶4   The district court found that Wife and J.O. had cohabited and that their cohabitation terminated Husband's obligation to pay Wife alimony. The court stated that "[Wife] and [J.O.] lived their lives in multiple homes and had extensive and constant travel, which does not lend itself to a traditional analysis of a couple, who without those resources, cohabitate in a single home." The court found it significant that Wife and J.O. had been "together or staying in one of [J.O]'s homes approximately 87% of the time from December 2010 onward." Thus, considering the details of the couple's intimate and exclusive 30–31-month relationship ending sometime before April 2011, the district court found that the evidence before it established "cohabitation and a relationship akin to a husband and wife." The court ordered Wife to return to Husband "any alimony paid to her from December 22, 2010 to the present."[3]

¶5   Wife appealed and argued to the Utah Court of Appeals that the district court's interpretation of the statute failed to account for the present tense of the *to be* verb "*is*" in the statute. *See* UTAH CODE § 30-3-5(10) (alimony should dissolve upon establishment that "the former spouse is cohabitating"). Under Wife's reading, Husband could not establish that Wife *is* cohabiting, since she and J.O. had broken up months before Husband filed his motion. She argued that in order to terminate Husband's obligation under the plain language of the statute, Husband had to show that she was cohabiting at the time he filed his motion to terminate alimony.

¶6   Husband contended to the court of appeals that Wife's statutory interpretation argument was not preserved in the district court. The court of appeals responded, however, "that resolution of the question of whether Wife and J.O. cohabited requires us to interpret the Cohabitation Provision . . ." *Scott v. Scott*, 2016 UT App 31, ¶ 27 n.8, 368 P.3d 133. It thus chose to reach Wife's statutory

---

throughout this opinion when not quoting the statute. *See Cohabit*, GARNER'S MODERN AMERICAN USAGE (4th ed. 2016) ("*Cohabitate* is a misbegotten BACK-FORMATION that has never seriously competed with *cohabit* in print sources. . . . Current ratio (*cohabiting* vs. *cohabitating*): 8:1.").

[3] We omit the details of Wife and J.O.'s time spent together at their various homes and vacation destinations, recounted at length in the court of appeals' opinion, *Scott*, 2016 UT App 31.

interpretation argument "regardless of whether it was properly preserved." *Id.*

¶7 The court of appeals disagreed with Wife's plain language argument. The court explained that "[t]he language of the Cohabitation Provision has never been parsed in this way, and our case law has not squarely addressed the issue. Accordingly, we utilize applicable canons of construction to ascertain the meaning of the statute." *Id.* ¶ 28. The court of appeals then reasoned that, under a plain language reading, "when the present-tense [*to be*] verb is read within the context of the [statute] as a whole, the argument that its use demands that cohabitation be ongoing at the time of determination seems less persuasive." *Id.* ¶ 32 (internal citation omitted). It reasoned that to read the statute in a way that gives independent meaning to the word *is* would undermine the final effect the statute requires: that alimony "*terminates* upon establishment" of cohabitation. *Id.* (emphasis added); UTAH CODE § 30-3-5(10). The court of appeals determined that, because the statute lacks a provision allowing for "alimony reinstatement once cohabitation ends" or a provision explaining "that alimony is only suspended during cohabitation," "the word 'is' cannot bear the burden of an interpretation that requires such a complex approach, and there is no other language in the statute to justify encumbering it with such a burden." *Scott*, 2016 UT App 31, ¶ 32.

¶8 The court of appeals also reasoned that the legislature "could not have intended" the result Wife's briefing described. *Id.* ¶ 33 (citation omitted). The court acknowledged "that requiring termination of alimony in [Wife's] circumstances does not entirely align with the general economic policies underlying alimony." *Id.* ¶ 35. "[C]ohabitation is qualitatively different from remarriage. Remarriage provides a legally binding substitute for alimony; cohabitation does not." *Id.* But the court explained that

> interpreting the [statute] to terminate alimony only during periods of active cohabitation could create an incentive for persons receiving alimony to simply cohabit rather than marry, so that if the new relationship does not endure, the alimony from the former spouse would resume. This could result in something of a statutory preference for cohabitation over marriage, which seems unlikely to have been the legislature's intent.

4

*Id.* ¶ 33. Relying on its conclusion that Wife and J.O. had shared "a common abode" that was also their "principal domicile" for "more than a temporary or brief period of time," the court rejected Wife's argument and upheld the district court's conclusion that Wife and J.O. had cohabited. *Id.* ¶¶ 16–26.

¶9   Although the court of appeals agreed that Wife and J.O. had cohabited, it disagreed with the district court's timeframe. *Id.* ¶ 26. Instead of finding that Wife and J.O. began to cohabit on December 22, 2010, the court of appeals found that Wife and J.O. began to cohabit on February 17, 2011, "because their vacations together before they moved to [California] still retained a temporary quality." *Id.* The court of appeals therefore remanded the case to the district court for the limited purpose of adjusting Wife's payment to Husband to reflect the dates it found significant. *Id.* ¶ 38.

¶10   We disagree with the court of appeals' reading of the cohabitation statute. We instead conclude that the plain language of Utah Code section 30-3-5(10) requires the paying spouse to establish that the former spouse *is* cohabiting at the time the paying spouse files the motion to terminate alimony.[4] We also clarify an appellee's burden of persuasion on *certiorari* when the court of appeals addresses an issue that the appellee claims was unpreserved.

¶11   We have jurisdiction under Utah Code section 78A-3-102(3)(a).

## STANDARD OF REVIEW

¶12   On *certioriari*, we review decisions of the Utah Court of Appeals for correctness. *Nichols v. Jacobsen Constr. Co.*, 2016 UT 19, ¶ 13, 374 P.3d 3. "We also review questions of statutory interpretation . . . for correctness." *Id.*

---

[4] Because we conclude that Husband did not establish that Wife cohabited within the meaning of the statute, we do not reach the merits of Wife's other contentions arguing that the court of appeals erred in its application of the law.

## ANALYSIS

### I. The Court of Appeals Erred when It Found
### That Wife and J.O. Cohabited

¶13 Before we reach the merits of the court of appeals' conclusion that Wife cohabited with J.O., we must address Husband's argument that Wife failed to preserve the statutory construction issue. Husband argued to the court of appeals that it should not address the meaning of the statute because Wife had not presented that question to the district court. The court of appeals declined to resolve whether the issue had been preserved and instead addressed what it believed to be the proper construction of the statute. The court explained that, "[b]ecause we believe that resolution of the question of whether Wife and J.O. cohabited requires us to interpret the Cohabitation Provision, we address this argument regardless of whether it was properly preserved." *Scott v. Scott*, 2016 UT App 31, ¶ 27 n.8, 368 P.3d 133.

¶14 The court of appeals appears to have believed that it was trekking down a path we marked in *Patterson v. Patterson*, 2011 UT 68, ¶ 20, 266 P.3d 828. In *Patterson*, we considered the application of a statute even though the parties had not preserved the issue before the district court. We recognized that "our decision to reach [the] argument may undermine some of the policies underlying the preservation requirement." *Id.* ¶ 19. But we concluded that

> consideration of the [statute] is necessary to a proper decision. As the state's highest court, we have a responsibility to maintain a sound and uniform body of precedent and must apply the statutes duly enacted into law. Refusing to consider [appellant's] statutory argument in this case would cause us to issue an opinion in contravention of a duly enacted controlling statute. This we will not do.

*Id.* ¶ 20. And the court of appeals believed that it was following this path when it reached the statutory interpretation question.

¶15 Our preservation requirement promotes a number of important policies. It encourages orderly proceedings by requiring a party to advise a trial court of potential errors so the trial court has the opportunity to correct them before they blossom into appellate issues. It also discourages a party from strategically ignoring errors in hopes of enhancing her chances of prevailing on appeal. Thus, we

require a party to present an issue "in such a way that the [district] court has an opportunity to rule on [it]." *Id.* ¶ 12 (second alteration in original) (citation omitted). We "exercise wide discretion when deciding whether to entertain or reject matters that are first raised on appeal." *Id.* ¶ 13. And we have used that discretion to carve out a few exceptions to the preservation requirement. For example, "we have reached matters not raised below under 'exceptional circumstances' or when 'plain error' has occurred." *Id.* Stated differently, absent some exception, we do not normally address unpreserved issues.

¶16 This case does not present the normal situation. We are not asked to address an issue that a party is raising for the first time on appeal. Rather, we are asked to address an issue that the court of appeals determined it needed to resolve, even if it were unpreserved.

¶17 Husband all but ignores the court of appeals' decision to reach the statutory construction issue. He asserts simply that "[Wife] failed to preserve this argument in the trial court. *See* Record, passim. Therefore it should not have been considered by the court of appeals." In essence, Husband invites us to look past the court of appeals' actual decision and affirm on the alternative ground that the court of appeals should not have touched the unpreserved issue in the first place.

¶18 We have the ability to affirm a decision on any ground apparent on the record. "[I]t is well established that an appellate court may affirm" a judgment "if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action." *First Equity Fed., Inc. v. Phillips Dev., L.C.*, 2002 UT 56, ¶ 11, 52 P.3d 1137 (quoting *Dipoma v. McPhie*, 2001 UT 61, ¶ 18, 29 P.3d 1225). Thus, we could, in an appropriate case, affirm a court of appeals ruling where that court erroneously addressed an unpreserved issue.

¶19 That is not to say, however, that an appellee may simply flag the preservation problem and expect that we will exercise our discretion to ignore the court of appeals' decision and affirm for a lack of preservation. Indeed, when the court of appeals decides to reach an unpreserved issue, and we hear a petition for *certiorari* in the matter, an appellee would be well advised to do more than just point out that the issue was unpreserved in the district court. Sometimes we may need to be convinced that the court of appeals erred in tackling the unpreserved issue and that the error is

"apparent on the record." This is especially important in a case like this where the court of appeals explained its rationale for reaching the arguably unpreserved issue. In this circumstance, the party may want to argue that the unpreserved issue did not implicate plain error, did not present any exceptional circumstance, or that it was not necessary for the court of appeals to address the issue to reach a proper conclusion. Husband did none of these.

¶20 Here, it is not apparent on the record that the court of appeals should not have reached the question of how the Cohabitation Provision should be interpreted. The court of appeals believed that even if the statutory argument was not preserved, it needed to construe the statute to properly resolve the matter. We can see arguments going both ways on whether this case presented the court of appeals with the same choice we were presented in *Patterson*. But in the absence of parties willing to develop those arguments, we are reluctant to wade in on our own. Simply stated, the decision to affirm on other grounds lies in this Court's discretion and Husband has provided us little reason to exercise that discretion on the record before us.

¶21 As we previously stated, the resolution of this case turns on what the definition of *is* is. Utah Code section 30-3-5(10) provides that

> alimony to a former spouse terminates upon establishment by the party paying alimony that the former spouse *is cohabitating* with another person.

(Emphasis added). Wife argues—both to us now and previously to the court of appeals—that the statute's use of "is" requires that cohabitation be ongoing to terminate alimony under the plain language of the rule.[5] She contends that the court of appeals erred

---

[5] We note that the language of the divorce decree may point to a different result. *See supra* ¶ 3 n.1. That language provides that "[a]limony shall terminate upon the remarriage or cohabitation of [Wife]." We again note that, while the court of appeals drew this to the parties' attention, *see Scott*, 2016 UT App 31, ¶ 9 n.2, neither party argues on *certiorari* that we should decide this case under the language of the divorce decree or that the decree's language demands a different result.

when it interpreted *is* to mean *was*. The court of appeals understood Utah Code section 30-3-5(10) to permit a showing that the spouse collecting alimony *was* or *had been* cohabiting at some previous date, regardless of whether the spouse was actually cohabiting at the time of filing. *Scott*, 2016 UT App 31, ¶¶ 27–37. Employing a plain language analysis that considered the cohabitation provision both "as a whole" and "in harmony with" the other provisions of the statute, *id.* ¶ 28 (citation omitted), the court of appeals determined that Wife's "present cohabitation" reading was erroneous regardless of the legislature's "use of the present-tense 'is,'" *id.* ¶¶ 32–33. First, the court believed the statute's later use of the verb *terminates* "precludes an interpretation that alimony might then be reinstated should the cohabitation . . . end." *Id.* ¶ 32. Next, it believed Wife's interpretation "could lead to results that the legislature 'could not have intended.'" *Id.* ¶ 33 (citation omitted). And, finally, it complained that Wife "offered no guidance on how to feasibly implement" a present-tense reading. *Id.* ¶ 34. Wife contends that the most reasonable interpretation of the statute is hers: that the plain language of the statute "requires that cohabitation be ongoing to terminate alimony."

¶22   When we interpret statutes, "our primary objective is to ascertain the intent of the legislature." *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 15, 301 P.3d 984 (citation omitted).

> Since "'[t]he best evidence of the legislature's intent is the plain language of the statute itself,' we look first to the plain language of the statute." In so doing, "[w]e presume that the legislature used each word advisedly." . . . When we can ascertain the intent of the legislature from the statutory terms alone, "no other interpretive tools are needed," and our task of statutory construction is typically at an end.

*Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (alterations in original) (citations omitted). We review questions of statutory interpretation for correctness affording the court of appeals' opinion no deference. *Nichols v. Jacobsen Constr. Co.*, 2016 UT 19, ¶ 13, 374 P.3d 3.

¶23   We believe the court of appeals erred in reading less into the word *is* than the word demands. As the court of appeals noted, "[i]nstead of 'is,' the legislature certainly could have used the present perfect tense—'has cohabited'—which would have 'denote[d] an act, state, or condition that is now completed or continues up to the

present.'" *Scott*, 2016 UT App 31, ¶ 32 (second alteration in original) (citation omitted); *see also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987) ("Congress could have phrased its requirement in language that looked to the past . . . , but it did not choose this readily available option."). And the court of appeals admitted that

> the strongest statutory support for Wife's interpretation of the [statute] is the use of the present-tense "is."

*Scott*, 2016 UT App 31, ¶ 32. We agree: the strongest support for Wife's interpretation of the statute is, indeed, the language itself. The language of the statute provides that alimony terminates upon establishment "that the former spouse *is cohabitating* with another person." UTAH CODE § 30-3-5 (10) (emphasis added). "Is cohabiting" is a verb phrase comprised of two verbs: the present tense auxiliary "is" and the present participle "cohabiting." *Be, cohabit, -ing,* OXFORD DICTIONARY OF ENGLISH IPHONE APP VERSION 9.0.2 (2017). The present participle of any verb—like cohabiting—paired with *is* creates a "continuous tense[]." *Be,* OXFORD DICTIONARY OF ENGLISH IPHONE APP VERSION 9.0.2 (2017). And *continuing* means *ongoing,* or "still in progress." *Continue, ongoing,* OXFORD DICTIONARY OF ENGLISH IPHONE APP VERSION 9.0.2 (2017). In light of the statute's plain language, we cannot see how a showing of anything less than *present* or *ongoing* cohabitation meets the statute's terms head-on.

¶24 A statutory reading that credits a verb's tense is not uncommon. Our own court of appeals relied on similar reasoning in *Prows v. Labor Commission*: "Typically, we understand 'is' as a present-tense form of the verb 'to be.' Accordingly, we assume that the legislature used 'is' here as a present-tense verb." 2014 UT App 196, ¶ 11, 333 P.3d 1261 (citation omitted). We have done likewise. *See Richards v. Brown*, 2012 UT 14, ¶ 27, 274 P.3d 911 (interpreting a statute according to the "present perfect tense"). And Utah is in good company. *See, e.g., Sherley v. Sebelius*, 644 F.3d 388, 394 (D.C. Cir. 2011) ("The use of the present tense in a statute strongly suggests it does not extend to past actions. The Dictionary Act provides 'unless the context indicates otherwise . . . words used in the present tense include the future as well as the present.'" (omission in original) (quoting 1 U.S.C. § 1); *United States v. Williams*, 462 F. Supp. 2d 342, 344 (E.D.N.Y. 2006) ("In short, 'is' means 'is,' not 'is or was' or 'is, depending on the chronology of events.'"), *aff'd sub nom. United*

*States v. Darden*, 539 F.3d 116 (2d Cir. 2008); *see also AK Steel Corp. v. Commonwealth*, 87 S.W.3d 15, 18 n.7 (Ky. Ct. App. 2002) (citations omitted) ("This is not the first time a judicial body has been presented with the surprisingly difficult task of discerning the meaning of a monosyllabic word of repeated, everyday usage."). Not for nothing, the Supreme Court of the United States has likewise indicated that, "[c]onsistent with normal usage, we have frequently looked to Congress' choice of verb tense to ascertain a statute's temporal reach." *Carr v. United States*, 560 U.S. 438, 448 (2010); *see, e.g.*, *United States v. Wilson,* 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes.").

¶25 The court of appeals reached a contrary conclusion reasoning that the Cohabitation Provision immediately follows the Remarriage Provision and that "[i]t appears that the legislature had the same purpose in enacting each provision: to terminate alimony when a new relationship 'legally or functionally replaces the need for financial support.'" *Scott*, 2016 UT App 31, ¶ 29 (citation omitted). Viewing the statute through the prism of the statute's purported purpose, the court of appeals concluded that its reading would allow the "alimony consequences [to] take effect as of the date cohabitation began, just as in the case of a remarriage." *Id.* ¶ 31.

¶26 The court of appeals noted that the only significant difference between Utah Code section 30-3-5(9), the Death or Remarriage Provision, and section 30-3-5(10), the Cohabitation Provision, is "the means by which termination [of alimony] occurs." *Id.* ¶ 29. The language of the Death or Remarriage Provision provides that alimony terminates automatically "*upon* the remarriage or death" of the former spouse; however, the Cohabitation Provision provides that alimony terminates "upon establishment . . . that the former spouse *is* cohabitating." UTAH CODE § 30-3-5(9), (10) (emphases added).[6] But because the court of appeals posited that the legislature must have wanted both

---

[6] Husband cites *Black v. Black* for the proposition that cohabitation need not be ongoing: "the order imposing alimony terminate[s] automatically upon the establishment of cohabitation." 2008 UT App 465, ¶ 8, 199 P.3d 371. This passage is court of appeals dicta and does not bind us. Moreover, in light of our decision today, it misstates the law.

provisions to operate in a similar fashion, it looked to harmonize the statutes in a fashion that would permit the "alimony consequences" to "take effect as of the date cohabitation began," and consequently minimized the differences in the statutory language. *Scott*, 2016 UT App 31, ¶ 31. But if we start from the premise that we should discern what the legislature intended from the plain language of the text unencumbered by notions of what we think the legislature must have wanted the language to accomplish, the difference in the language assumes greater importance. *See, e.g.*, *Penunuri*, 2013 UT 22, ¶ 15 ("Because '[t]he best evidence of the legislature's intent is the plain language of the statute itself,' we look first to the plain language of the statute." (alteration in original) (citation omitted)); *Ivory Homes, Ltd. v. Utah State Tax Comm'n*, 2011 UT 54, ¶ 21, 266 P.3d 751 ("To discern legislative intent, we first look to the plain language of the statute."); *K & T, Inc. v. Koroulis*, 888 P.2d 623, 627 (Utah 1994) ("When faced with a question of statutory construction, we look first to the plain language of the statute."). Starting with the plain language, we can infer that the legislature intended that alimony cease upon remarriage or death, but that, in the case of cohabitation, it would terminate upon establishment of present cohabitation— even if that meant that the provisions would operate differently.[7]

---

[7] The court of appeals also resisted this conclusion because it might allow for "alimony reinstatement once cohabitation ends." *Scott*, 2016 UT App 31, ¶ 32. The court of appeals opined that if the legislature wanted this result, it could have said so explicitly, perhaps by including a provision that stated "that alimony is only suspended during cohabitation." *Id.* We see two issues with this conclusion. First, as written, the statute does not suspend alimony during cohabitation. The statute's plain language does not require the resumption of alimony payments after the paying spouse establishes cohabitation, even if the cohabiting later ends. The seemingly anomalous result the court of appeals assails will occur only when the cohabitation begins and ends before the paying spouse can file a termination petition. Second, although we whole-heartedly agree with the court of appeals that the legislature could have been clearer, we are not justified from departing from the plain language of the statute just because we can envision a manner in which the legislature could have expressed its intent more clearly.

¶27 We understand the court of appeals' instinct to push against the result the plain language yields, and we understand the temptation to read the statute in a fashion that treats cohabitation identically to remarriage. It may seem incongruous that a marriage lasting forty-eight hours will terminate alimony but that a cohabiting relationship lasting years may not if that relationship ends before the paying spouse files to terminate alimony. But we do not believe, as the court of appeals did, that this is a result that the legislature "could not have intended." *Scott*, 2016 UT App 31, ¶ 33 (quoting *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 26, 267 P.3d 863 (invoking "absurdity" doctrine)).

¶28 Both Husband and the court of appeals invoke the absurdity doctrine without calling it by name. The absurdity doctrine permits us to reform unambiguous statutory language where the language would lead to an absurd result. *Bagley*, 2016 UT 48, ¶ 27.

> [T]his court will not apply the absurdity doctrine unless "the operation of the plain language . . . [is] so overwhelmingly absurd that no rational legislator could have intended the statute to operate in such a manner." This standard is satisfied only if the legislature could not reasonably have intended the result.

*Id.* ¶ 28 (second alteration in original) (omission in original) (citations omitted). We concede that the legislature *could* have intended a different result—in fact, it could have intended the result the court of appeals envisioned, one where the Remarriage and Cohabitation Provisions yield the same outcome—but we do not believe that the result the plain language dictates is absurd, let alone "so overwhelmingly absurd that no rational legislator could have intended the statute to operate in such a manner." *Id.* (citations omitted). As such, it is our obligation to take the plain language at face value and trust the legislature to amend the statute if it intended a different result.[8]

---

[8] Of course, parties unhappy with this statutory default may choose instead to agree to a divorce decree that terminates alimony upon cohabitation.

¶29    The court of appeals also sought to avoid the decision we reach because it believed that "there is the potential that the couple will simply cease cohabitation in advance of that date to avoid the consequence if the Cohabitation Provision were to require that the recipient spouse 'is cohabitating' at the time of hearing or trial." *Scott*, 2016 UT App 31, ¶ 34.

¶30    As an initial matter, the relevant date is not the hearing or trial, but the date of filing. The present tense *is* demands the condition to be present at the time the paying spouse declares before the court that a former spouse *is* cohabiting. That declaration takes place on the date of filing. *Cf. Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004) ("'[J]urisdiction of the court depends upon the state of things at time of the action brought.' . . . [The time-of-filing rule] measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing.") (citations omitted); *Int'l Trading Corp. v. Edison*, 109 F.2d 825, 826 (D.C. Cir. 1939) (requiring a "duty [to] exist at the time of filing a petition for mandamus"); *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1535 (Fed. Cir. 1987) (requiring "knowledge of facts within the possession of the inventor at the time of filing" in the patent context); *Craig v. Beto*, 458 F.2d 1131, 1134 (5th Cir. 1972) (requiring a prisoner to be serving "a sentence . . . at the time of filing" in the habeas context); *Koch v. Carmona*, 643 N.E.2d 1376, 1381 (Ill. App. Ct. 1994) (evaluating an attorney's conduct "under the circumstances existing at the time of the filing" in the attorney discipline context); W. VA. CODE § 49-4-601(i) (requiring findings to be "based upon conditions existing at the time of the filing" in child abuse and neglect context); 38 U.S.C. § 109 (1991) (providing that no benefit "shall be extended to any person who is not a resident of the United States at the time of filing [a] claim").

¶31    We recognize that this does not entirely ameliorate the problem the court of appeals recognized, i.e., that a couple might cease cohabiting to avoid forfeiting alimony. It is true that a couple who has been warned a paying spouse is planning to move to terminate alimony could choose to stop cohabiting to avoid the termination. And, if that occurs, the continued payment of alimony would square with the policy behind alimony. *See Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985) (recognizing that the "most important function of alimony is to provide support for the [receiving spouse] as nearly as possible at the standard of living [he or] she enjoyed during marriage, and to prevent the [receiving spouse] from

becoming a public charge" (citation omitted)); *Myers v. Myers*, 2010 UT App 74, ¶ 12, 231 P.3d 815 (stating that "the principal purpose of alimony is economic"). To the extent that a cohabitant might engage in subterfuge to create the appearance that the cohabiting has terminated when it has not, we trust our district courts and the adversarial system to do their best to detect efforts to manipulate the outcome. *See generally Pendleton v. Pendleton*, 918 P.2d 159 (Utah Ct. App. 1996) (finding that boyfriend and former spouse resided together under Utah Code section 30-3-5(6) (1989) although boyfriend maintained a separate apartment, among other things).

## II. Wife Is Not Entitled to Attorney Fees in Defending Husband's Petition to Terminate Alimony

¶32   Wife also asks this court to remand to the district court for the purpose of awarding Wife attorney fees both at trial and on appeal under Utah Code section 30-3-3. The statute provides for an award of attorney fees "in any action to *establish* . . . alimony" or "[i]n any action to *enforce* an order of . . . alimony"; it does not provide for attorney fees to defend an action to *terminate* alimony. UTAH CODE § 30-3-3(1), (2) (emphases added). Here, there is no allegation that Husband failed to continue to pay alimony. This is not a situation where the paying spouse stops paying and the receiving spouse must petition the district court to intervene and enforce its order. Thus, Wife's efforts to resist Husband's motion to terminate alimony are not compensable under Utah Code section 30-3-3's plain language.

## CONCLUSION

¶33   We conclude that Utah Code section 30-3-5(10) requires the paying spouse to establish that the former spouse *is* cohabiting at the time the paying spouse files the motion to terminate alimony. We clarify that an appellee wishing to contest our review of an arguably unpreserved issue already reached by the court of appeals has an obligation to explain how the court of appeals erred in reaching the unpreserved issue. Finally, defending a motion to terminate alimony does not entitle the defending spouse to an award of attorney fees under Utah Code section 30-3-3.

---